**Vernon Ray WILSON, Vicki L. Wilson, Plaintiffs,**

v.

**STUDEBAKER–WORTHINGTON, INC., Turbodyne Corporation, McGraw Edison, Inc., Goulds Pumps, Inc., Masoneilan International, Inc., Raytheon Co., and United Engineers & Constructors, Inc., Defendants.**

**STUDEBAKER–WORTHINGTON, INC., Turbodyne Corporation, and McGraw Edison, Inc., Third Party Plaintiffs,**

v.

**GENERAL ELECTRIC COMPANY, Third Party Defendant.**

**No. EV 80–259–C.**

United States District Court, S.D. Indiana, Evansville Division.

Nov. 10, 1983.

George A. Porch, Phillip L. Kiely, Theodore Lockyear, Evansville, Ind., for plaintiffs.

R. Stephen LaPlante, Danny E. Glass, Evansville, Ind., for defendants.

## MEMORANDUM ORDER

BROOKS, District Judge.

This matter comes before the Court on various motions of the defendants filed pursuant to Rules 12 and 56, Federal Rules of Civil Procedure. The Court, having considered the motions and the plaintiffs' responses, hereby enters the following memorandum and orders, pursuant to Rule 52, Federal Rules of Civil Procedure.

## STATEMENT OF CASE

The plaintiff, Vernon Ray Wilson, was injured on October 2, 1979, in an explosion of the Worthington Single Stage Turbine on which he was working. The plaintiff was acting within the scope of his employment when the accident occurred at the General Electric Company plant, in Mount Vernon, Indiana. This suit was filed December 31, 1980, against several defendants allegedly responsible for the design, manufacture, and sale of the turbine assembly and its replacement parts. Six counts are included in the plaintiffs' second amended complaint:

COUNT I: Negligence in design and in warning of hazards and instructing on use of the turbine-pump assembly.

COUNT II: Negligence in design and manufacture of replacement parts for the turbine pump assembly and in the failure to provide written warnings.

COUNT III: Strict liability in the manufacture and sale of the turbine-pump assembly.

COUNT IV: Breach of express and implied warranties.

COUNT V: Loss of consortium.

COUNT VI: Strict liability in the manufacture and sale of the replacement

parts used in the turbine-pump assembly.

With minor exceptions, the parties do not dispute the chronological sequence of events which form the basis of the plaintiffs' complaint.

In January, 1969, General Electric Company (hereinafter "G.E.") entered into a contract with United Engineers & Constructors, Inc., (hereinafter "United Engineers"), for the design and construction of polycarbonate manufacturing facilities at the G.E. plant in Mount Vernon, Indiana. As part of the design and construction contract, United Engineers was responsible for the expansion of the boiler facilities on the plant premises. This expansion required the installation of an additional boiler and feed-water pump to maintain a continuous supply of water to the additional boiler. Various bids were accepted on the supply of the feed-water pump. The low bidder was Goulds Pumps, Inc., (hereinafter "Goulds"). In accordance with the express specification of G.E. and United Engineers that a Worthington Corporation U2R turbine be utilized to drive the feed-water pump, Goulds purchased the turbine from Studebaker-Worthington, Inc. (hereinafter "Studebaker-Worthington").[1] Following shipment of the turbine on September 11, 1969, employees of Goulds mounted the turbine on a base plate with the feed-water pump and placed a coupling device between the two pieces of equipment. Goulds then shipped the turbine-pump assembly to G.E. on September 29, 1969, for final installation in the G.E. plant. The turbine and pump assembly arrived at the Mount Vernon plant on October 3, 1969, and was thereafter put into service.[2] The accident which is the subject of this lawsuit occurred on October 2, 1979.

In addition to the allegations of negligence and strict liability made with respect to the turbine-pump assembly, the plaintiffs also contend negligence and strict liability claims exist with respect to the replacement parts used in the overhaul and repair of the Studebaker-Worthington turbine. The record reveals only defendant Studebaker-Worthington supplied replacement parts for the turbine-pump assembly. No motions for summary judgment or dismissal have been filed as to the latter claims on replacement parts.

## I

The Court first considers the motions for summary judgment filed by defendants Goulds, United Engineers, and Studebaker-Worthington. Each defendant raises comparable arguments regarding plaintiffs' allegations in Counts I, III, and V (as Count V incorporates rhetorical paragraphs pertaining to the earlier counts).

The primary basis asserted by defendants in support of their motions for summary judgment is the statute of limitations imposed in products liability actions under Section 33–1–1.5–5, Indiana Code, which provides:

> [A]ny product liability action must be commenced within two years after the cause of action accrues or within ten (10) years *after the delivery of the product to the initial user or consumer;* except that, if the cause of action accrues more than eight (8) years but not more than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues. (Emphasis added).

Interpretation of that code section was provided by the Indiana Supreme Court in *Dague v. Piper Aircraft Corp.,* 418 N.E.2d 207 (Ind.1981), the definitive and, in fact, lone state case on point in interpreting the statute of limitations for product liability actions. That opinion stated, "The clear intention of the legislature in section five was to limit the time within which product liability actions can be brought... The

---

1. Studebaker-Worthington, Inc., is one of several divisions of the same manufacturing firm. The use of the terms Turbodyne Corporation, Studebaker-Worthington, Worthington, and McGraw Edison, Inc., are interchangeable in this case and refer to the same entity.

2. United Engineers paid Goulds for the turbine-pump assembly on October 7, 1969.

obvious intent of the statute, however, is that the action must be brought within two years after it accrues, but in any event within ten years after the product is first delivered to the initial user or consumer, unless the action accrues more than eight but less than ten years after the product's introduction into the stream of commerce." *Id.*, 418 N.E.2d at 210.

The defendants' position may be summarized as follows: The period of limitations commenced on or about September 11, 1969, the date the turbine was shipped to Goulds for mounting on the base plate with the feed-water pump. Defendants support that position by reference to the definitions section of the Indiana products liability statute.

> "User or consumer" shall include: *a purchaser;* any individual who uses or consumes the product; or any other person who, while acting for or on behalf of the injured party, was in possession and control of the product in question. (Emphasis added).

Section 33–1–1.5–2, Indiana Code.

Defendants further assert Goulds, as a purchaser of the turbine, was a "user or consumer" as defined by the Indiana Code. Consequently, they argue, the period of limitations commenced in September of 1969 and had expired at the time plaintiff was injured on October 2, 1979.

Plaintiffs retort that Goulds was not "the initial user or consumer" as contemplated by Section 33–1–1.5–5. Under their theory, the statute of limitations did not commence until October 3, 1969, when the turbine-pump assembly was delivered to the G.E. plant in Mount Vernon. As a result, they argue, the statute of limitations does not bar plaintiffs' claims of negligence and strict liability.

The *Dague* decision interpreted the statute and reflected on the legislative intent motivating passage of the Products Liability Act. That court concluded the legislature intended to place an absolute limit on all product liability actions. In an earlier decision involving the same parties, *Dague v. Piper Aircraft Corp.*, 513 F.Supp. 19

(D.C.Ind.1980), the District Court, Northern District of Indiana, denied a cause of action accruing more than ten (10) years after initial delivery of the product.

Plaintiffs argue that despite the absolute ten-year period, the issue here is the interpretation of the phrase "initial user or consumer." They insist the "product" in this cause was not the turbine alone, but an assembly of the turbine mounted on a base plate for delivery to G.E., the "ultimate user" of the device. If this interpretation were accepted, the plaintiffs would be within the period of limitations.

The *Dague* opinion by the Indiana Supreme Court made reference to a product's entry into the stream of commerce. *Id.* 418 N.E.2d at 207. There was no distinction whether the purchaser was a retailer, wholesaler, or individual consumer. The statute makes no reference to dates of delivery to "ultimate" users of consumers, to dates of installation, or to dates of viable operation. Instead, it refers only to delivery to the initial user or consumer. As a consequence, defendants persuasively argue the plaintiffs' interpretation is contrary to the statutory language.

The decision on a motion for summary judgment is not lightly taken. As Rule 56(c) states, "The judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Plaintiff maintains there are factual disputes which linger in this cause, with particular reference to the incorporation of the turbine with a base plate and pump into a "final product." Such an interpretation would compel this Court into a more imaginative statutory interpretation than the law permits. Plaintiff states that Goulds' purchase of the turbine should be characterized as a "pass-through" sale. Yet, there is no reference to such a sale in the statute.

■ This inquiry must focus on the turbine. Its malfunction was the apparent cause of the plaintiffs' injuries. The turbine indisputably was purchased by Goulds and delivered to that operation more than ten (10) years before this cause of action accrued. This Court concludes that Goulds, as a purchaser, was a "user or consumer" as defined by the statute and interpreted by the Indiana Supreme Court. While statutes of limitations are by their nature harsh, particularly where a cause of action is barred by a matter of a few days, this Court is required to find against the plaintiff on this issue as a matter of law and policy.

Therefore, for the foregoing reasons, defendants' motion for summary judgment on Counts I, III, and V is GRANTED.

## II

Defendants Goulds and United Engineers also have filed motions to dismiss pursuant to Federal Rule 12(b)(6) on grounds the allegations contained in Count IV on the second amended complaint are not properly brought against them or are also barred under the applicable limitation statute.

Count IV of the plaintiffs' second amended complaint alleges, in pertinent part:

That General Electric purchased said machine from defendants in the normal course of business and via defendants' usual distribution system.

That defendants expressly and impliedly warranted the machine to be merchantable and fit for use for the purpose for which it was designed, manufactured and sold.

That defendants breached their said warranties in that the machine was not merchantable and fit for the purpose for which it was intended by its manufacturer, seller and user in that said machine while being used as intended oversped and exploded causing the said injuries, damages and losses to the plaintiff, Vernon Ray Wilson.

It is unclear whether plaintiffs' claims for breach of warranty sound in tort or in contract. The defendants contend the count should be dismissed regardless of the theory advanced. Assuming that Count IV rests in tort, defendants argue it is redundant of Count III of the plaintiffs' second amended complaint. That count alleges the defendants should be held strictly liable with respect to the turbine-pump assembly. An alternate assumption, that Count IV is grounded in contract, compels defendants' argument that lack of privity between plaintiffs and defendants is sufficient for dismissal under Indiana law. Further, defendants assert the applicable statute of limitations of the Indiana Code (Section 26–1–2–725) also bars the allegations contained in Count IV.

■ It has long been established in Indiana that an action for breach of warranty may sound in either contract or tort. *Wright-Bachman, Inc., v. Hodnett*, 235 Ind. 307, 133 N.E.2d 713 (1956). The contours of the separate theories of breach of warranty were examined by this court in *Withers v. Sterling Drug, Inc.*, 319 F.Supp. 878 (D.C.Ind.1970), in which Judge Holder explained:

A suit for breach of implied warranty which sounds in contract is an action which arises out of the agreement of the parties, and only a party to the contract, one in privity with him, or one within the coverage of § 19–2–318 of Burns' Indiana Statutes Annotated (1964 repl.) may enforce the implied warranty. An action for tortious breach of implied warranty arises out of a duty fixed by the law and is independent of the will or agreement of the parties. 1 I.L.E. *Action*, § 25, p. 93.

319 F.Supp. at 882.

■ The Indiana courts have expressly adopted Section 402A of the Restatement (Second) of Torts (1964). *Cornette v. Searjeant Metal Products, Inc.*, 147 Ind.App. 46, 258 N.E.2d 652 (1970). Since the adoption of Section 402A, the courts have recognized that the fundamental policy underpinning both Section 402A and tortious breach of warranty is identical: the protection of

the consumer from physical harm caused by a product. *Cornette,* supra. This recognition has led the courts to conclude that "[t]ortious breach of implied warranty forms the theoretical basis for the strict liability rule adopted in Indiana and does not constitute a separate cause of action." *Withers,* 319 F.Supp. at 883; *See also, Fruehauf Trailer Division v. Thornton,* 174 Ind.App. 1, 366 N.E.2d 21 (1977). Thus, assuming that Count IV of the present complaint alleges a tortious breach of warranty, it would be duplicitous of Count III which alleges liability based upon Section 402A, Restatement (Second) of Torts. See, *Neofes v. Robertshaw Controls Company,* 409 F.Supp. 1376 (D.C.Ind. 1976).

■ Alternatively, the allegation in question might also be interpreted as a cause of action sounding in contract. Although privity of contract is no longer required if a personal injury action for a defective product sounds in tort, *Lane v. Barringer,* 407 N.E.2d 1173 (Ind.Ct.App. 1980), the elimination of the privity requirement does not extend to a claimed breach of warranty based upon contract. *Id.* Thus, in order to prevail on a breach of warranty claim based upon contract, the plaintiff must show that he is a party to the contract, in privity with a party to the contract, or falls within the Uniform Commercial Code as adopted in Indiana.

■ Defendants persuasively argue that plaintiffs in this case were not in privity with either Goulds or United Engineers. Goulds purchased the turbine as previously outlined in this opinion; United Engineers provided essentially consultant services to G.E. The plaintiffs never entered into any dealings with these defendants and could not be in privity under a contract theory and meet the requirements of Indiana law.

Therefore, plaintiffs' cause of action as outlined in Count IV has no basis in Indiana law. The motions to dismiss filed by United Engineers, motions to dismiss are GRANTED with respect to Count IV of the second amended complaint.

## III

The second part of defendant Studebaker-Worthington's motion for summary judgment focused on Count IV of the plaintiffs' second amended complaint. That count sought damages for breach of warranty. Studebaker-Worthington bases its motion on the ground that the statute of limitations had expired prior to the filing of this cause of action.

■ The statute of limitations for breach of warranty in contracts for sale is in Indiana Code 26–1–2–725:

An action for breach of any contract must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year but may not extend it.

A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Delivery of the turbine, the malfunction of which is the subject of this lawsuit, occurred prior to September 29, 1969, and more than four (4) years prior to the filing of this action.

It might also be noted the plaintiffs also would fail to maintain a cause of action under Count IV for reasons explained in Section II of this opinion.

The Court GRANTS defendant Studebaker-Worthington's motion for summary judgment as to Count IV of the plaintiff's second amended complaint.

## IV

Defendant Raytheon Co. (hereinafter "Raytheon") has filed a motion for summary judgment. Raytheon alleges it was

named in this action only because it was the parent company of defendant United Engineers. The pleading paragraph in plaintiffs' second amended complaint stated, "[T]he plaintiffs believe that the defendant (United Engineers) is either a subsidiary of, or a division of, the defendant, Raytheon Co., and that the defendant, Raytheon Co., has assumed and is responsible for all liabilities, claims and debts of the defendant, (United Engineers) ... [T]he exact legal relationship between said defendants is unknown to the plaintiffs at this time, but is known to the defendants."

 Affidavits of Charles Resnick, Vice President, General Counsel and Corporate Secretary for Raytheon, and Cullen Shipman, General Counsel and Corporate Secretary for United Engineers, set forth the independence of United Engineers and establishes Raytheon has not agreed to assume the debts, claims and liabilities of United Engineers. Plaintiffs have done no more than make an allegation in a rhetorical paragraph of the complaint. Relying on those affidavits, the Court finds there are no grounds for retaining Raytheon in this action.

It also should be noted that if Raytheon was not excluded on that ground, the arguments advanced by United Engineers above, and the finding in favor of its summary judgment and the motion to dismiss, would apply to Raytheon as well.

Therefore, the Court GRANTS Raytheon's motion for summary judgment.

## V

In summary, two counts of the second amended complaint remain for disposition by the Court. Plaintiffs allege negligence in design and manufacture of replacement parts for the turbine and in the failure to provide written warnings under Count II. Plaintiffs allege strict liability in the manufacture and sale of the replacement parts used in the turbine pump assembly in Count VI. The second amended complaint does not now state a cause of action for loss of consortium or for breach of any warranty connected to the design or manufacture of replacement parts.

IT IS SO ORDERED.