Andrew **STAINKO**, **Plaintiff-Appellant**,

v.

**TRI–STATE COACH LINES, INC., and Shoup Buses, Inc., Defendants-Appellees.**

**No. 64A03–8609–CV–280.**

Court of Appeals of Indiana, Third District.

June 25, 1987.

Rehearing Denied Aug. 5, 1987.

---

Alan Faulkner, David M. Hamacher, Saul I. Ruman & Associates, Hammond, for plaintiff-appellant.

Rudy C. Kutansky, Stults, Custer, Kutansky & McClean, Gary, for defendants-appellees.

STATON, Judge.

This appeal concerns Andrew Stainko's fall into a work pit in the defendants' garage. The trial court, finding that Stainko had incurred the risk as a matter of law, awarded summary judgment to the defendants. We consider the following issues:

1. Whether Stainko was a licensee or an invitee on the defendants' property.

2. Whether the evidence and inferences, read in a light most favorable to Stainko, establish as a matter of law that he voluntarily exposed himself to the peril of an uncovered, unlighted, and unguarded work pit.

We reverse.

The evidence favorable to Stainko, the non-moving party, is as follows. Defendant Shoup Buses, Inc., owns a building which it leases to co-defendant Tri-State Coach Lines (we will refer to the defendants as Tri-State). Tri-State provides bus service between Gary, Indiana, and Chicago, Illinois.

The front of Tri-State's building is used as a ticket office; the rear is used as a maintenance garage for buses. While riders are not permitted in the garage, unsolicited sales personnel customarily enter the building there. In the floor of the garage is a service pit, in which Tri-State employees work on the buses from below.

Stainko was a salesman for Monogram Fasteners, a company which sells bus maintenance items. Stainko had been in Tri-State's garage several times before, soliciting business and making deliveries. Stainko's typical visit began with his entry into the garage through a side door (or an overhead door if it was open). He walked alongside the offices to the parts department, where he would meet with Don Ladwien, Tri-State's purchasing agent. After the meeting, he would exit by the same route.

Stainko's deposition shows he was vaguely aware of the work pit, but, since his route did not take him near it, he did not note its precise location. The deposition reflects Stainko's memory that the pit was usually lit and roped off.

On January 27, 1982, Stainko made a sales call to Tri-State's garage. He went to the parts department, but Ladwien was not there. Ladwien's secretary told Stainko that Ladwien was in the garage, and to "go out there" to find him.

The garage was dark. The only light came from the back of the garage where a mechanic was working. Stainko had done business with this mechanic before, so he began to walk toward him. Stainko was injured when he fell into the uncovered, unlighted, and unguarded pit.

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Creighton v. Caylor-Nickel Hospital, Inc.* (1985), Ind.App., 484 N.E.2d 1303, 1305–06. We must liberally construe all evidence in favor of Stainko, the non-movant, and resolve any doubts as to the existence of a genuine issue against Tri-State, the proponent. *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, 729. Even if the trial court believes the non-moving party will not be successful at trial, where material facts conflict or conflicting inferences are possible from undisputed facts, summary judgment should not be entered. *Grimm v. Borkholder* (1983), Ind.App., 454 N.E.2d 84, 86.

## I.

### *Status on Property*

■ Tri-State urges that Stainko was, as a matter of law, a mere licensee when he fell and was injured. Since a licensee "takes the premises as he finds them," Tri-State argues, Stainko is barred from recovery.

Tri-State's position is meritless. It relies on *Plummer v. Dill* (1892), 156 Mass. 426, 31 N.E. 128, for the following assertion:

To come under an implied invitation, as distinguished from a mere license, the visitor must come for a purpose connected with the business in which the occupant is engaged.

*Plummer*, 31 N.E. at 129. Tri-State argues that, because Stainko was not on the property to buy a ticket or to ride a bus, his presence was unconnected to Tri-State's business. We disagree. Tri-State acknowledges a policy of permitting unsolicited vendors to enter the garage area to solicit sales. Tri-State also acknowledges that Stainko had visited this part of the

building on several prior occasions, and that he had made sales during some of these visits. Stainko and Tri-State had an ongoing business relationship to the economic benefit of *both* parties. Bus maintenance is a necessary part of providing bus service, and Stainko's prior sales of bus maintenance items to Tri-State preclude a finding as a matter of law that Stainko was on Tri-State's property as a mere licensee.[1]

## II.

### *Incurred Risk*

■ Incurred risk is generally a question of fact for the jury. *Kroger v. Haun* (1978), Ind.App., 379 N.E.2d 1004, 1007. Incurred risk can be found as a matter of law *only* if the evidence is without conflict and the sole inference to be drawn is that the plaintiff a) had actual knowledge of the specific risk, and b) understood and appreciated the risk. *Borton v. Lavenduskey* (1985), Ind.App., 486 N.E.2d 639, 642; *Meadowlark Farms, Inc. v. Warken* (1978), Ind.App., 376 N.E.2d 122, 133.

The doctrine of incurred risk is based on consent. Our Indiana Supreme Court has explained:

By definition ... the very essence of incurred risk is the conscious, deliberate and intentional embarkation upon the course of conduct with knowledge of the circumstances. It requires much more than the general awareness of a potential for mishap. Incurred risk contemplates acceptance of a specific risk of which the plaintiff has *actual* knowledge.

*Beckett v. Clinton Prairie School Corp.* (1987), Ind., 504 N.E.2d 552, 554 (original emphasis) (quoting *Power v. Brodie* (1984), Ind.App., 460 N.E.2d 1241, 1243).

Thus, we may affirm summary judgment only if the evidence, viewed in a light most favorable to Stainko, supports the sole inference that he had actual knowledge of, and consented to expose himself to, the uncovered, unlighted, and unguarded pit in Tri-State's garage. This is not, however,

---

1. Tri-State's repeated implication that Stainko was not authorized to be in the garage at all is unavailing in light of Tri-State's agent's statement to Stainko that he should "go out there" to look for Ladwien.

the sole inference available from the evidence.

■ While Stainko's deposition shows he was aware that bus garages have repair pits, the deposition manifests his belief, formed through prior experience, that most of the pits, including the one in question here, were lighted and that all of them were guarded (i.e., roped off) when they were not covered. Thus, Stainko did not consciously, deliberately, and intentionally embark on a trip through the garage with *actual* knowledge of an uncovered, unlighted, and unguarded repair pit. The evidence is susceptible to the inference that Stainko believed that the normal and customary safeguards existed in and around the pit. Stainko had a right to assume that Tri-State would carry forth its duty to use due care to maintain the garage premises in a reasonably safe condition until he had reasonable notice to the contrary. *Kroger*, 379 N.E.2d at 1007.

The present case is thus similar to *Borton, supra.* In *Borton*, the plaintiff was loading the defendant's cattle into a trailer, and was injured when one of the cows kicked him. Borton was "an experienced cattleman who had been around steers most of his life." *Borton*, 486 N.E.2d at 640. Years earlier he had been kicked by another steer. He stated he knew steers could kick when nervous, but he did not know that the steer which kicked him was more prone to kick than other steers. *Id.* The defendant moved for summary judgment, arguing that no material issues of fact existed and that Borton incurred the risk as a matter of law. The trial court granted the motion.

The court of appeals reversed, concluding that "conflicting inferences can be drawn regarding Borton's knowledge and acceptance of the specific risk in loading this steer...." The court thus reversed and remanded for trial. *Id.*

The present facts are sufficiently similar to those in *Borton* to compel the same conclusion. While Stainko was generally aware, as was Borton, of a "potential for mishap," neither was actually aware of the specific risk that caused his injury. Therefore, the evidence does not support the sole inference that Stainko incurred the risk, and summary judgment was improper.

We reverse and remand for further proceedings consistent with this opinion.

GARRARD, P.J., and HOFFMAN, J., concur.