Clayton L. FERGUSON, Brenda
Ferguson, Appellants
(Plaintiffs),

v.

MODERN FARM SYSTEMS, INC., Kern, Kirtley and Herr Company, and David Riggs, d/b/a Riggs Construction Company, Appellees (Defendants).

No. 12A02–8702–CV–52.

Court of Appeals of Indiana,
Second District.

July 11, 1990.

George N. Craig, Jeffrey A. Boyll, Craig, Craig & Boyll PLC, Brazil, James T. Robison, Robison, Robison, Bergum & Johnson, Frankfort, for appellants.

Robert F. Wagner, Jane Magnus D'Alesandro, Lewis, Bowman, St. Clair & Wagner, Indianapolis, for Modern Farm Systems, Inc.

Robert H. Johnson, Bruce L. Kamplain, Norris, Choplin & Johnson, Indianapolis, for Kern, Kirtley and Herr Co.

Peter G. Tamulonis, Richard A. Young, John B. Drummy, Kightlinger & Gray, Indianapolis, for David Riggs d/b/a Riggs Const. Co.

BUCHANAN, Judge.

## CASE SUMMARY

Appellants-plaintiffs Clayton L. Ferguson (Clayton) and Brenda Ferguson (Brenda) [hereinafter collectively referred to as the Fergusons] appeal the trial court's grant of summary judgment for appellees-defendants Modern Farm Systems, Inc. (MFS), Kern, Kirtley, and Herr Company (Kern), and David Riggs, d/b/a Riggs Construction Company (Riggs), claiming that the trial court erred in determining that there was no genuine issue of material fact and that the defendants were entitled to judgment as a matter of law.

We affirm.

## FACTS

On October 27, 1984, Clayton was injured when he fell off a ladder which was affixed to the side of a grain storage bin. Clayton climbed the ladder carrying a conduit to be used for unclogging a drain spout. Clayton used his right hand to hold the conduit and climbed the ladder using the other hand. As he climbed, his left had slipped off a rung and he fell to the ground.

Before his fall, Clayton had climbed the same ladder on approximately twenty other occasions. On the day of this accident, he had climbed the same ladder five times. At his first deposition, Clayton said he knew the ladder was uncaged, and that he was aware there was a risk of falling any time one climbs a ladder, whether using one or two hands. He also stated he accepted the chance off falling off a ladder as part of his job.

Kern was the owner and operator of the grain operator complex where the grain bin was located. MFS manufactured the grain bin's components and Riggs, an MFS dealer, constructed the grain bin. All of the component parts for the bin were received at the construction site on September 4, 1974. The parties dispute whether the construction was complete in September or December of 1974.

The Fergusons filed their complaint on March 12, 1985. The Fergusons claimed the MFS, Riggs, and Kern negligently failed to provide a protective cage around the ladder or a rest platform. They also sued MFS and Riggs under a product liability theory, alleging that the grain bin was defective and unreasonably dangerous. Brenda sought damages for the loss of her husband's companionship (consortium). The trial court granted summary judgment in favor of MFS, Riggs and Kern.[1]

---

1. The trial court articulated the reasons for granting summary judgment in favor of MFS, but did not specifically set forth the grounds for granting summary judgment in favor of Riggs and Kern. Although it is often an aid to appellate review if the trial court specifically states

## ISSUES

Two issues are dispositive in this appeal:

1. Did Clayton incur the risk of his injuries as a matter of law, thereby precluding a claim of negligence?

2. Were the Fergusons' product liability claims against MFS and Riggs barred by the applicable statute of limitations period?

ISSUE ONE—Did Clayton incur the risk of his injures as a matter of law, thereby precluding a claim of negligence?

PARTIES' CONTENTIONS—The Fergusons contend the specific risk which Clayton would have had to incur should be defined as the increased risk of falling when climbing an uncaged ladder one-handed. Consequently, they assert a question of fact existed because he did not perceive a greater risk of falling by climbing one-handed.

MFS, Riggs, and Kern respond that Clayton's own admissions that he knew he could fall off the ladder, whether climbing with one or two hands, shows as a matter of law that he incurred the risk of falling.

CONCLUSION—Clayton incurred the risk of his injuries as a matter of law.

▉ Incurred risk can be found as a matter of law only if the evidence is without conflict and the sole inference to be drawn is that the plaintiff knew and appreciated the danger caused by the defendant's negligence, but nevertheless accepted it voluntarily. *Get–N–Go, Inc. v. Markins* (1989), Ind., 544 N.E.2d 484; *Beckett v. Clinton Prairie School Corp.* (1987), Ind., 504 N.E.2d 552; *Moore v. Federal Pac. Elec. Co.* (1980), Ind.App., 402 N.E.2d 1291, *trans. denied; Kroger Co. v. Haun* (1978), 177 Ind.App. 403, 379 N.E.2d 1004, *trans. dismissed.* The injured party must have been more than generally aware of the potential for mishap, but must have had actual knowledge of the specific risk. *Beckett, supra; Stainko v. Tri–State Coach Lines, Inc.* (1987), Ind.App., 508

N.E.2d 1362, *trans. denied; Borton v. Lavenduskey* (1985), Ind.App., 486 N.E.2d 639, *trans. denied; Power v. Brodie* (1984), Ind.App., 460 N.E.2d 1241, *trans. denied; see also Phillips v. United Eng'rs and Constructors, Inc.* (1986), Ind.App., 500 N.E.2d 1265. However, a specific risk involves only the ordinary and usual risks inherent in a given act. *Beckett, supra; Power, supra; Kroger Co., supra.*

▉ Clayton knew and appreciated the specific risk of falling off an unenclosed ladder whether he used one or two hands to climb. He voluntarily accepted that risk as part of his job. When one knows and appreciates the risk of falling as a result of a dangerous condition, yet voluntarily continues to use the dangerous instrumentality, the injured party incurs the risk as a matter of law. *See St. Mary's Byzantine Church v. Mantich* (1987), Ind.App., 505 N.E.2d 811, *trans. denied; see also Sullivan v. Baylor* (1975), 163 Ind.App. 600, 325 N.E.2d 475.

The specific risk is not defined as the increased danger of climbing a ladder one-handed. The proper focus delineated in *Beckett, supra; Moore, supra;* and *Kroger Co., supra,* is the knowledge of the condition created by the defendants. MFS, Kern, or Riggs did not create a condition which required Clayton to climb with one hand.

Our holding is consistent with *Stainko, supra; Phillips, supra;* and *Borton, supra.* In *Stainko,* the plaintiff knew that bus garages have repair pits, but was unaware that the pit might be unlighted and unguarded. While the plaintiff in *Borton* knew that nervous cattle could kick him, he did not know that a particular steer was wild and had a greater tendency to kick. Likewise, in *Phillips,* the injured party complained about certain dangers with a catwalk, but there was no testimony that he knew of the unguarded condition at the end of the catwalk from which he fell. The specific risks created by the defendants in

---

the legal basis for granting summary judgment, there is no requirement in Ind.Rules of Procedure, Trial Rule 56, that the trial court do so. *Shallenberger v. Scoggins–Tomlinson, Inc.*

(1982), Ind.App., 439 N.E.2d 699; *Meier v. Pearlman* (1980), Ind.App., 401 N.E.2d 31, *cert. denied,* 449 U.S. 1128, 101 S.Ct. 948, 67 L.Ed.2d 115.

these three cases were not known to the plaintiffs, unlike the case before us, where Clayton was expressly aware of the specific risk he incurred.

Clayton's awareness is more closely akin to that of the plaintiff in *Beckett, supra,* in which our supreme court determined a baseball player had voluntarily assumed the risk, as a matter of law, of the possibility of colliding with another baseball player on the playing field. The supreme court focused on the plaintiff's deposition testimony which indicated he was clearly aware collisions were possible. *Id.* at 555–56.

Just as the supreme court in *Beckett* was satisfied that the record conclusively demonstrated the plaintiff's actual knowledge of the risk incurred, we conclude our record unmistakably shows Clayton actually knew of the dangers he faced by climbing the ladder with one hand. Clayton's first deposition reveals that he recognized that there was always an increased risk of falling off a ladder when carrying something while climbing the ladder. At his first deposition, the following exchanges occurred:

"Q. Did carrying something up that ladder make it more difficult to climb the ladder?

A. Yes.

Q. Did it make it—

A. (Continuing) Regardless of what you were carrying.

Q. If you were carrying anything up that ladder did it make it more danger [sic] to climb that ladder?

A. Yes.

Q. How so?

THE WITNESS: How much more dangerous?

Q. How much more dangerous?

A. Pretty dangerous.

Q. Can you describe why?

A. *Well, for one thing, it hasn't got a safety cage on it and the rungs on this particular ladder are slick and like what happened to me, I slipped and fell.*

Q. The last several questions and answers have been about the same ladder that you fell off of; is that correct?

A. Yes.

Q. *You knew that before the date you were injured, didn't you?*

A. *Yes.* I knew that it was dangerous to take things up on your body.

. . . . .

Q. Even if you had both hands available for the ladder it was still dangerous to carry things up there?

A. Yes.

Q. Including the same ladder involved in this case?

A. Yes. *Every ladder is dangerous.*

Q. *Did it increase the risk of falling off the ladder to carry something up the ladder?*

A. *Always.*

Q. *You knew that before the date of your injury; is that correct?*

A. *Yes.*

. . . . .

Q. *Anytime you have only got one hand on the ladder, only one hand being used to climb the ladder, that's pretty risky, isn't it?*

A. *Yes.*

Q. *And you knew that before you got hurt, didn't you?*

A. *Yes.*"

*Clayton Deposition I* at 51–53, 69 (emphasis supplied).

While his second deposition might be construed as a contradiction of his prior testimony, his subsequent statements cannot be used to defeat a summary judgment motion when the only issue raised is his own credibility. *See Gaboury v. Ireland Rd. Grace Brethern, Inc.* (1983), Ind., 446 N.E.2d 1310. If a party could raise an issue of fact simply by contradicting his own prior testimony, this would diminish the utility of summary judgment as a procedure for screening out sham issues of fact. *Id.* The trial court properly granted summary judgment on the issue of negligence because Clayton incurred the risk of his injuries.

ISSUE TWO—Were the Fergusons' product liability claims against MFS and Riggs

barred by the applicable statute of limitations?

PARTIES' CONTENTIONS—The Fergusons argue that the trial court erred in granting summary judgment for MFS based on the ten-year statute of repose applicable to product liability actions because the period did not commence until the time that the completed grain bin was conveyed to Kern. Therefore, they argue, summary judgment was not proper because a question of fact existed whether the bin was conveyed in September or December of 1974. As to Riggs, the Fergusons argue that the statute of limitations pertaining to improvements to real property applies, and that a genuine issue of fact existed whether the bin and ladder were "substantially complete" in December of 1974.

MFS asserts that the Fergusons' cause of action accrued beyond the ten-year product liability period of repose and is therefore barred as a matter of law. Riggs also argues that the Fergusons' claim under the Product Liability Act is governed by the product liability statute of limitations. Riggs alternatively contends that the Fergusons brought their action beyond ten years from the date of "substantial completion" of the grain bin and the claim is barred by the statute of repose for actions involving improvements to real property.

CONCLUSION—The Fergusons' product liability claims against MFS, the manufacturer, and Riggs, the contractor, are barred by the ten-year statute of repose applicable to product liability actions.

At the threshold, we must determine which statute of limitations applies to the Fergusons' product liability claims against MFS and Riggs. So we begin with the language of the applicable statutes.

Ind.Code 33–1–1.5–5 (1988) [hereinafter referred to as the product liability statute of limitations] sets out a ten-year statute of repose:

"[A]ny product liability action in which the theory of liability is negligence or strict liability in tort must be commenced within two (2) years after the cause of action accrues or within ten (10) years after the delivery of the product to the initial user or consumer; except that, if the cause of action accrues more than eight (8) years but not more than ten (10) years after that *initial delivery*, the action may be commenced at any time within two (2) years after the cause of action accrues." (Emphasis supplied).

The statute of limitations applying to actions for the improvement of realty, which the Fergusons espouse as applicable to their claim against Riggs, is contained in IC 34–4–20–2 (1988) [hereinafter referred to as the real estate improvement statute of limitations], and reads as follows:

"No action to recover damages whether based upon contract, tort, nuisance, or otherwise, for:

(a) any deficiency, or alleged deficiency, in the design, planning, supervision, construction, or observation of construction of an improvement to real property;

(b) an injury to property, either real or personal, arising out of any deficiency; or

(c) injury to the person, or for wrongful death, arising out of any such deficiency;

shall be brought against any person who designs, plans, supervises, or observes the construction of, or constructs an improvement to real property, unless the action is commenced within the earlier of ten (10) years from the date of substantial completion of the improvement or twelve (12) years after the completion and submission of plans and specifications to the owner if the action is for deficiency in design."

 Our conclusion is that the real estate improvement statute of limitations is not applicable in this context.[2] When two

---

2. In the answer to the complaint, Riggs recognized that the Fergusons' action was barred by a statute of limitations. However, Riggs did not specifically plead the product liability statute of limitations, but rather pled the real estate improvement statute of limitations. As a general rule, it is not necessary, in pleading the statute of limitations, that there be an express reference

or more statutes deal with the same subject matter, the statute which is more recent and specific will prevail over the older and more general one. *Connell v. City of Logansport* (1979), Ind.App., 397 N.E.2d 1058; *see also Grain Dealers Mut. Ins. Co. v. Chief Indus., Inc.* (N.D.Ind.1985), 612 F.Supp. 1179. The real estate improvement statute of limitations was enacted in 1967. The legislature passed the product liability statute of limitations in 1978. The real estate improvement statute of limitations is very broad in its application, barring damages based on "contract, tort, nuisance or otherwise." *See* IC 34–4–20–2; *see also Dodd v. Kiefer* (1981), Ind.App., 416 N.E.2d 463. The coverage of the product liability statute of limitations is much narrower because it applies only to product liability actions in which the theory of liability is negligence or strict liability in tort. *See* IC 33–1–1.5–5; *see also Grain Dealers Mut. Ins. Co., supra.* Therefore, according to the rules of statutory construction, the product liability statute of limitations governs here because it was more recently enacted and has a narrower scope of coverage than the real estate improvement statute of limitations. *Accord Grain Dealers Mut. Ins. Co., supra.*

The conclusion that the product liability statute of limitations should control was intimated in *Dodd, supra.* In *Dodd,* an electrician installed a certain electrical system in a residential home. After the installation, a fire occurred causing damage to the home. The electrical contractor moved for summary judgment on the basis of the real estate improvement statute of limitations. The trial court ruled that the ten-year statute of limitations for real estate improvements applied to the product liability count of the complaint. The Court of Appeals indicated that the product liability statute of limitations, which had been enacted subsequent to the case, would apply to a product liability claim, even when the product is incorporated into real estate. *See id.* at 465 n. 1.

In *Grain Dealers Mut. Ins. Co.,* an action was brought against the manufacturer of a grain storage bin for negligent design, fabrication, manufacture, and assembly. The question before the court was whether, under Indiana law, the product liability or the real estate improvement statute of limitations applied to the claim. The court thoroughly reviewed the substantive law of Indiana and determined that the "Product Liability Act's statute of limitations applies to a product liability claim, even when the product is incorporated into real estate." *Id.* at 1182. The court further held that,

"Since the product liability statute was more recently enacted and has a narrower scope of coverage than the real estate improvement statute, it governs products liability actions based upon negligence or strict liability in tort as the Court of Appeals intimated in *Dodd.*"

*Id.*

" 'Product' means any item or good that is personalty at the time it is conveyed by the seller to another party. It does not apply to a transaction that, by its nature, involves wholly or predominantly the sale of a service rather than a product." IC 33–1–1.5–2. The second sentence of that definition expresses the intention of the legislature. The legislature did not contemplate a distinction between movable and nonmovable property, but rather sought to exclude transactions which relate primarily

to the statute by which it is contended that the cause of action is barred. 51 *Am.Jur.2d Limitation of Actions* 459 (1970). In *Waymire v. Waymire* (1896), 144 Ind. 329, 43 N.E. 267, a plea of a twenty-year statute sufficiently preserved the statute of limitations defense even though a fifteen-year statute was the proper one to be pleaded in a action for partition. Recent Indiana decisions have permitted a defendant to raise a statute of limitations defense, even though procedures set forth in Ind.Rules of Procedure, Trial Rule 8(C) were not strictly followed. *See e.g., Shideler v. Dwyer* (1981), 275

Ind. 270, 417 N.E.2d 281; *Kohlman v. Finkelstein* (1987), Ind.App., 509 N.E.2d 228, *trans. denied; Honeywell, Inc. v. Wilson* (1986), Ind.App., 500 N.E.2d 1251, *trans. denied.* Our trial rules are designed to avoid pleading traps and, to the greatest extent possible, insure that cases are tried on the issues that their facts present. *Honeywell, supra.* Thus the focus is not on the technical procedure used to raise the issue, but on the issue's legal merits. *Id.* This should be the rule especially in a case such as this when there was no definitive law determining which statute of limitations defense was applicable.

to the act of providing a service, such as that provided by an accountant, attorney, or physician. Other cases which have applied the Indiana Product Liability Statute demonstrate that an action against a party for a defective item which becomes part of an improvement to real estate after the item is delivered by the manufacturer, is a product liability action. *See Ruther v. Robins Eng'g and Constructors* (7th Cir. 1986), 802 F.2d 276 (truck hopper basement and system were products for purposes of the Indiana products liability statute); *Corbin v. Coleco Indus., Inc.* (7th Cir.1984), 748 F.2d 411 (product liability statute applied to manufacturer of above-ground swimming pool); *Wilson v. Robertshaw Controls Co.* (N.D.Ind.1985), 600 F.Supp. 671 (IC 33–1–1.5–5 applied to action against water heater control manufacturer); *Lukowski v. Vecta Educ. Corp.* (1980), Ind. App., 401 N.E.2d 781, *trans. denied* (strict liability in tort action recognized against manufacturer and installer of gymnasium bleacher); *Shanks v. A.F.E. Indus., Inc.* (1981), 275 Ind. 241, 416 N.E.2d 833 (section 402A of Restatement of Torts, which was codified in products liability act, was applied in strict liability action against manufacturer of a grain dryer); *Coffman v. Austgen's Elec., Inc.* (1982), Ind.App., 437 N.E.2d 1003 (in strict liability action against manufacturer of an auger and grain dryer, claim would have been governed by product liability statute had it been in effect at the time of plaintiff's injury).

*Monsanto Co. v. Miller* (1983), Ind.App., 455 N.E.2d 392, does not compel a contrary result. In *Monsanto*, dairy farmers brought an action against Bloomfield Silo Co., who constructed a silo on land owned by the plaintiffs, and Monsanto, the manufacturer of a coating material used in the silo. The only reference in that case to the real estate improvement statute is in the statement of facts which indicates that the

*trial court* dismissed Miller's cause of action against Bloomfield Silo Co. pursuant to the real estate improvement statute of limitations. The trial court's ruling as to that defendant was not appealed and therefore the statement contained in the factual summary has no authoritative value.

■ As the real estate improvement statute of limitations does not apply here, we must go the next step and decide whether the product liability statute of limitations bars the Fergusons' claims. We conclude that it does.

In construing a statute, the duty of this court is to ascertain and give effect to the intent of the legislature. *Dague v. Piper Aircraft Corp.* (1981), 275 Ind. 520, 418 N.E.2d 207. Lobbying efforts by sellers of products convinced the legislature that "soaring insurance costs had created a 'crisis' in [the] industry and that the remedy was enactment of a statute which would, at some point, cut off claims previously actionable." *Whittaker v. Federal Cartridge Corp.* (1984), Ind.App., 466 N.E.2d 480, 483, *trans. dismissed.* A product liability action must be brought within two years after it accrues, but in any event within ten years after the product is first delivered to the initial user or consumer, unless the action accrues more than eight but less than ten years after the product's introduction into the stream of commerce.[3] *Dague, supra.*

The Fergusons satisfied the two-year requirement by filing their complaint on March 12, 1985. The remaining question is whether the product was delivered between eight to ten years before Clayton fell from the grain bin ladder. The crux of the dispute hinges on the following language: "delivery of the product to the initial user or consumer." IC 33–1–1.5–5. This language is like a rope—it can be fashioned into either a noose or a ladder.

---

**3.** While the statute uses the disjunctive "or" between the two year statute of limitations and the ten year statute of repose, the Indiana Supreme Court has interpreted the statute to join the two clauses instead with the conjunctive "and." *Dague, supra.* "Unless the ten-year period was intended to be an outer cutoff, there would be

no need to state again that the plaintiff has two years in which to bring his action if his injury occurs during the ninth or tenth year of the life of the product." *Id.* (quoting J. Vargo & J. Leibman, *Survey of Recent Developments in Products Liability,* 12 *Ind.L.Rev.* 227, 250 (1979)).

*Whittaker* is helpful. In *Whittaker, supra*, the plaintiff was injured while using a rifle manufactured by defendant Marlin Firearms, which was loaded with ammunition manufactured by defendant Federal Cartridge. The rifle was manufactured in 1947 and sold to a retailer in 1948. The ammunition was manufactured in 1968 and sold to retailers in 1969. The ammunition was purchased by the plaintiff in 1973, and the rifle was purchased in 1977 or 1978 by the plaintiff's mother. The complaint was filed in August of 1982. The court explained that the period of limitations for a product liability action under IC 33–1–1.5–5 begins from the time the product is "delivered from the manufacturer, wholesaler, retailer or distributor to the first consuming entity," *id.* at 482, and not from the time the product is delivered to retailers or intermediaries. While *Whittaker* may resolve any questions regarding delivery to retailers, the case does not squarely address the question presented here.

A factual posture more similar to our case was presented in *Wilson v. Studebaker–Worthington, Inc.* (S.D.Ind.1983), 582 F.Supp. 383. The analysis in *Wilson*, interpreting Indiana law, is persuasive. Defendant United Engineers was responsible for installing a boiler and feed-water pump at a General Electric (G.E.) manufacturing facility in Mount Vernon, Indiana. The feed-water pump was supplied by defendant Goulds. Goulds purchased a turbine from Studebaker–Worthington to drive the feed-water pump. Following the shipment of the turbine on September 11, 1969, employees of Goulds mounted the turbine on a base plate with the feed-water pump. Goulds then shipped the turbine-pump assembly on September 29, 1969 for final installation at the G.E. plant. The turbine and pump assembly arrived at the plant on October 3, 1969. The plaintiff was injured on October 2, 1979. The defendants argued that the periods of limitations commenced in September of 1969, the date the turbine was shipped to Goulds, and expired when the plaintiff was injured in October of 1979. The plaintiffs insisted that G.E. was the "ultimate user" of the "product" (e.g., a turbine mounted on a base plate) and therefore the statute of limitations did not commence until October 3, 1969, when the turbine-pump was delivered to the G.E. plant.

The court focused its inquiry on the turbine as the product as it was the apparent cause of the injury. The turbine was purchased by and delivered to Goulds, who used and consumed the turbine to create the feed-water pump, more than ten years before the cause of action accrued. Therefore, the plaintiffs' product liability claim was barred by the ten-year statute of limitations. The court's analysis seemed to be premised on the Latin phrase: *expressio unius est exclusio alterius*, it being observed the statute makes no reference to the dates of installation or the dates of viable operation. The limitations period does not commence from the delivery to the *ultimate* user or consumer, but rather refers only to the delivery to the *initial* user or consumer.

Applying the plain meaning of the statute to the given facts of this case, the statute of repose commenced running when MFS *delivered* the grain bin components to Riggs on September 4, 1974. Riggs is the initial user or consumer because he was the first entity to utilize the components when constructing the grain bin. The injury of October 27, 1984 occurred more than ten years after that delivery. Unfortunately, lines must be drawn somewhere, and this line was so drawn by the legislature as to bar the Fergusons' claims even though by a narrow margin.

Judgment affirmed.

CONOVER, J., concurs.

SULLIVAN, J., concurs in result with opinion.

SULLIVAN, Judge, concurring.

I fully concur as to Issue I.

With respect to Issue II, I am able to concur only in result. My principal area of disagreement with the majority opinion concerns the analysis of *Wilson v. Studebaker–Worthington, Inc.* (S.D.Ind.1983), 582 F.Supp. 383. In the *Wilson* case it was

the turbine component which caused the injury. Therefore, delivery of that component was the appropriate focus with respect to the trigger date under the ten year statute of limitations. In the case before us, however, the ladder as a component did not cause injury except as affixed to the 46–foot high storage bin. It, therefore, appears more reasonable to conclude that the trigger date in the case before us was the date when the components were put together and "delivered" to the initial consumer [1], Kern, who also happens to be the "ultimate" consumer of the individual components.

For the above stated reasons, I concur in the result reached by the majority opinion.

---

1. I use the word "initial" to denote the first consumer following assembly of the compo- nents.