Harry A. LILGE and Betty Lilge,
Appellants and Cross–Appellees
(Plaintiffs Below),

v.

RUSSELL'S TRAILER REPAIR, INC.,
Appellee and Cross–Appellant
(Defendant Below).

No. 30A04–8908–CV–333.

Court of Appeals of Indiana,
Fourth District.

Jan. 31, 1991.

Douglas G. Wagner, Brazill & Bennett, Indianapolis, for appellants and cross-appellees.

David T. Kasper, Eric A. Riegner, Locke Reynolds Boyd & Weisell, Indianapolis, for appellee and cross-appellant.

CHEZEM, Judge.

### Case Summary

Plaintiffs/Appellants/Cross–Appellees, Harry and Betty Lilge, appeal from the trial court's entry of summary judgment in favor of Defendant/Appellee/Cross–Appellant, Russell's Trailer Repair, Inc. We reverse.

### Issues

Appellants present five (5) issues for our review, which we consolidate and restate as follows:

I. Whether there are genuine issues of material fact which precluded the entry of summary judgment for Russell's.

II. Whether the summary judgment could have been based on the "open and obvious rule."

III. Whether Lilge incurred the risk of his injuries as a matter of law.

In addition, Russell's presents one (1) issue by Cross–Appeal, which has to do with whether the trial court erred when it denied Russell's Motion to Amend Answer.

### Facts

On March 25, 1983, Harry Lilge was a "delivery driver" with Capital Consolidated, Inc. In that capacity, he drove a truck and made deliveries in and around Indianapolis. The truck in question had a front cab area as well as a rear cargo box where goods were stored for transport. The rear box was accessible by a rear overhead door which is similar to a typical garage door.

The procedure that Lilge followed when making a delivery was as follows: he would open the overhead door, climb into the rear box, stack the goods to be delivered near the edge of the doorway, step onto the truck's back ledge, face the interior of the box, grasp a rope or strap tied to the overhead door handle, and then exit the box by pulling down on the overhead door as he stepped down onto the ICC bumper (which was a piece of U-shaped angle iron approximately three feet long that was attached approximately 35 inches below the level of the truck box floor). Lilge would place one foot on the ICC bumper and then the other on the ground. Lilge followed this procedure for almost two years (with approximately 30 deliveries per day).

Lilge fell while making a delivery on March 23, 1983. He was stepping down from the back ledge to the bumper "when the rope or something broke." His foot never reached the bumper, and his next recollection was being on the ground with severe pain in his right ankle (which was fractured).

Prior to Lilge's fall, the truck was refurbished by Russell's Trailer Repair, Inc., in April of 1981. Capital Consolidated had hired Russell's to remove the rear cargo box from one truck chassis and to install it on the truck in question. Russell's also installed the ICC bumper on that truck as part of the job.

Other facts will be added as needed.

### Discussion and Decision

When reviewing a summary judgment, the standard on review is the same as it was for the trial court: whether there was a genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Farm Bureau Co-op. v. Deseret Title Holding Corp.* (1987), Ind.App., 513 N.E.2d 193, 195, *reh. denied.* We stand in the position of the trial court and consider the same matters. *Moll v. South Central Solar Systems, Inc.* (1981), Ind.App., 419 N.E.2d 154, 161. All evidence must be construed in favor of the nonmovant, and all doubts as to the existence of a material issue must be resolved against the movant. Even if facts are not in dispute, summary judgment is inappropriate if conflicting inferences arise. *ITT Commercial Finance Corp. v. Union Bank & Trust Co.* (1988), Ind.App., 528 N.E.2d 1149, 1152. A fact is material for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action. *Delk v. Board of Commissioners of Delaware County* (1987), Ind.App., 503 N.E.2d 436, 438.

### I

■ The first argument we address has to do with whether there are genuine issues as to material facts. Based on our review of the record, we conclude that such issues exist in this case. Their presence should have precluded the entry of summary judgment.

Lilge claims that the rear exit of the truck was defectively designed and the cause of his fall. His expert testified in part as follows:

I think two main things were the most likely cause for him to fall off the truck. One I think was that the truck was poor-

ly designed, manufactured and marketed. And I think the second one is that the potential hazard inherent in the poorly designed truck wasn't obvious to the user. And if those two things wouldn't have been present, it would be most unlikely that the plaintiff in question would have fallen from the truck.

With respect to the design, the expert explained that there was no "solid stationary handle" for Lilge to use when entering or descending from the rear of the truck. In addition, the distance between the floor of the truck and the ICC bumper, and between that bumper and the ground, was too great and appeared to violate pertinent sections of the Code of Federal Regulations. The expert also testified that "it would have been rather helpful ... to have a warning sign [back] there, indicating a potential danger."

On the other hand, Russell's claims that "the sole proximate cause of [Lilge's] injuries was his own negligent failure to place his foot on the ICC bumper." For this reason, there are no issues of material fact which precluded summary judgment. We disagree. The question of what caused the fall (construing the facts and inferences in favor of Lilge) *is* an issue of fact which should have precluded summary judgment for Russell's.

■ We also note that there is an issue of material fact as to whether the reconditioning job on the truck was a "product" as that term is defined and used in the Product Liability Act. As stated in Ind.Code 33–1–1.5–2:

> 'Product' means any item or good that is personalty at the time it is conveyed by the seller to another party. It does not apply to a transaction that, by its nature, involves wholly or predominantly the sale of a service rather than a product.

Even though this definition was added by amendment after the fall in this case occurred (approximately one month later), the law is well-established that we may consider subsequent amendments where the original statute was ambiguous as to the question at hand. As noted by the Supreme Court of Indiana in *Seymour National*

*Bank v. State* (1981), Ind., 422 N.E.2d 1223, 1226, "[i]n cases of ambiguity, we may resort to subsequent amendments in order to glean the Legislature's initial intent." In addition, "the subsequent amendment of a statute is indicative of the Legislature's intent at the initial enactment of that statute." *United States Fidelity & Guaranty Co. v. DeFluiter* (1983), Ind. App., 456 N.E.2d 429, 432. In the present case, the original Act was ambiguous because it did not define the term "product." Therefore, it was not clear what transactions came within the purview of the Act. That was rectified when the Legislature indicated their original intent by adding the amendment on or about April 21, 1983.

■ Russell's argues the reconditioning work was predominantly the sale of a service because it merely transferred the rear cargo box from one truck chassis to another, and performed other minor repair work on the new truck for Capital Consolidated. But while Russell's did not manufacture or make the cargo box, the record does not conclusively show that it did not manufacture the ICC bumper. Indeed, the repair order for the job describes certain parts provided by Russell's that could have been used to construct the bumper. Thus, a material issue of fact exists as to whether the bumper was transferred from the old truck or provided by Russell's. This also should have precluded the entry of summary judgment because it may "affect the outcome of the case." *See, Bain v. Board of Trustees of Starke Memorial Hospital* (1990), Ind.App., 550 N.E.2d 106, 108, *reh. denied.*

The issue of fact as to the bumper may affect the outcome because it may determine whether the transaction in question was "predominantly the sale of a service rather than a product." I.C. 33–1–1.5–2. If the work provided was predominantly a service, then the transaction would not be subject to the Products Liability Act. In that case, Lilge would not be able to maintain his product liability action based on strict liability.

Another issue of material fact has to do with the rope that was attached to the

overhead door handle of the truck. Russell's argues that it cannot be held liable because it is undisputed that "Russell's did not sell, manufacture, design, or install the rope." But this argument assumes that the rope broke and caused the fall. This is not established by the record. While Lilge did state during his deposition that he thought "the rope or something broke," there is no other evidence establishing that fact. The statement even indicates that something *besides* the rope may have broken. This is an issue of fact which would not support the entry of summary judgment for Russell's.

## II

The next issue is whether the entry of summary judgment could have been based on the "open and obvious rule," which states:

> In the area of products liability, based upon negligence or based upon strict liability under 402A of the Restatement (Second) of Torts, to impress liability upon manufacturers, the defect must be hidden and not normally observable, constituting a latent danger in the use of the product. Although the manufacturer who has actual or constructive knowledge of an unobservable defect or danger is subject to liability for failure to warn of the danger, he has no duty to warn if the danger is open and obvious to all.

*Bemis Co., Inc. v. Rubush* (1981), Ind., 427 N.E.2d 1058, 1061.

■ Since *Bemis,* the Indiana Supreme Court has discussed or clarified the actions to which the rule can apply. Justice Dickson, writing for the Court in *Koske v. Townsend Engineering Co.* (1990), Ind., 551 N.E.2d 437, 442, stated "[w]e hold that the Indiana open and obvious danger rule does not apply to strict liability claims under the Indiana Product Liability Act." *See also, Get–N–Go, Inc. v. Markins* (1990), Ind., 550 N.E.2d 748. Therefore, the open and obvious rule could not have

foreclosed the strict liability claim set forth in Count I of Lilge's Complaint.

■ With respect to the negligence claim of the products liability action (Count III of the Complaint), the open and obvious rule can apply and serve as a basis for summary judgment under certain circumstances. But the law is clear that "[w]hen the facts or the reasonable inferences to be drawn therefrom are in conflict, the open and obvious nature of the danger is a question of fact for the jury." *FMC Corp. v. Brown* (1988), Ind.App., 526 N.E.2d 719, 724, *affirmed* (1990), Ind., 551 N.E.2d 444. In addition, this Court has stated:

> Whether a danger is open and obvious depends upon how broadly one construes the word 'danger' in the 'open and obvious *danger* rule.' Even though a person may be aware of a general danger, defects in the product may create an additional danger which is not open and obvious. [Citations omitted.]

*FMC Corp.,* 526 N.E.2d at 724–725; *See also, Corbin v. Coleco Industries, Inc.,* 748 F.2d 411, 413 (7th Cir.1984).

The record does not indicate that Lilge was aware of the danger presented by the alleged design defects. Also, his expert testified that "the poorly designed truck wasn't obvious to the user." Under these circumstances, an entry of summary judgment could not be based on the open and obvious rule.

## III

We next address the issue of incurred risk.[1] Russell's argued to the trial court that Lilge incurred the risk of falling from the back of the truck because he had actual knowledge of the danger and yet "continued to use the bumper as a step despite this danger."

■ The defense of incurred risk is generally a question of fact for the jury. *Moore v. Federal Pacific Electric Co.* (1980), Ind.App., 402 N.E.2d 1291, 1293. Incurred risk can be found as a matter of

---

1. Although incurred risk was not set forth as an affirmative defense, the issue was litigated by the parties' implied consent at summary judg-

ment. *Mowan v. Anweiler* (1983), Ind.App., 454 N.E.2d 436, 438.

law only if the evidence is without conflict and the sole inference to be drawn is that the plaintiff knew and appreciated the danger caused by the defendant's negligence, but nevertheless accepted it voluntarily. *Ferguson v. Modern Farm Systems, Inc.* (1990), Ind.App., 555 N.E.2d 1379, 1381. The injured party must have been more than generally aware of the potential for mishap; he must have had actual knowledge of the specific risk. *See, Beckett v. Clinton Prairie School Corp.* (1987), Ind., 504 N.E.2d 552, 554–555; *Stainko v. Tri-State Coach Lines, Inc.* (1987), Ind.App., 508 N.E.2d 1362, 1364, *reh. denied, trans. denied.* In this respect, the proper focus is the knowledge of the condition created by the defendant. *Ferguson,* 555 N.E.2d at 1381.

■ The evidence does not establish that Lilge had the knowledge required for incurred risk. In his affidavit, Lilge stated that he "did not know that there was a defect in the design of the truck box exit prior to [his] fall from it on March 25, 1983." While he was generally aware that he could fall, there is no evidence to establish he "knew and appreciated" the danger presented by the alleged defects in the design of the truck box exit by Russell's. Under the circumstances here, the issue of incurred risk cannot be decided as a matter of law, and does not support the entry of summary judgment.

### Cross–Appeal

Russell's argues in its cross-appeal that the trial court erred in denying its Motion to Amend Answer. That motion sought to add "the affirmative defenses of incurred risk, state of the art, and partial satisfaction." Russell's original counsel (who later withdrew from the case) did not set forth these defenses in the original Answer. The new counsel moved for leave to amend shortly after entering their appearance, which also was about one (1) month before trial.

We have stated on numerous occasions that "[t]he policy generally ... is liberally to allow the amendment of pleadings." *E.g., Huff v. Travelers Indemnity Co.* (1977), 266 Ind. 414, 363 N.E.2d 985, 989. In addition, the trial courts are vested with broad discretion in these matters. *Id.* As such, this Court will reverse the decision of the trial court only upon a manifest showing of abuse of discretion. *Beta Alpha Shelter of Delta Tau Delta v. Strain* (1983), Ind.App., 446 N.E.2d 626, 631.

■ A list of factors a trial court may consider in determining whether to grant or deny leave to amend has been set forth previously as follows:

> These [factors] include 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'

*Beta Alpha,* 446 N.E.2d at 631; *See also, Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

■ Based on our review of the record, we conclude that none of these factors were present. The proposed amendment should have been allowed. The trial court abused its discretion by denying it, and thereby prejudiced Russell's.

Reversed.

MILLER, P.J., concurs.

BAKER, J., concurs with separate opinion.

BAKER, Judge, concurring.

I fully concur with the majority opinion except that section which addresses the work Russell's performed on the truck's bumper.

This case squarely presents us with an issue we tangentially mentioned in *Hamilton v. Roger Sherman Architects Group, Inc., et al.* (Ind.App.1991), 565 N.E.2d 1136. *Hamilton* involved an architect and an independent contractor who were sued in strict liability and negligence for the design and installation of a bar in a restaurant. In that case, we did not need to decide whether the defendants were "manufacturers/sellers" who sold a "product" as those terms are defined in the Indiana Product

Liability Act (the Act). The present case, however, requires us to answer a similar question: whether a repairer can be held strictly liable for repairs to a chattel.

I agree with the majority that "[i]f the work provided was predominantly a service, then the transaction would not be subject to the Products Liability Act." Maj. at 1149. This statement is a tautology, however, which simply restates the language of IND.CODE 33–1–1.5–2. If Russell's manufactured the bumper, it is of course subject to liability under the Act. If Russell's performed a service, it is equally obvious that there is no liability under the Act. The real question, then, is, assuming Russell's performed only repair work, whether those repairs are sales or services under the Act.

In my opinion, repairs to chattels are not sales under the Act. The Act is largely an adaptation of § 402A of the Restatement (Second) of Torts (1965). The Restatement discusses the liability of independent contractors for repairs to chattels, however, in a separate section—§ 404. § 404 establishes a negligence standard for repairs by independent contractors such as Russell's.

> One who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels.

Restatement (Second) of Torts § 404 (1965). The liability imposed upon negligent manufacturers of chattels is set forth in § 395.

The Act imposes liability for placing defective, dangerous products into the stream of commerce. IND.CODE 33–1–1.5–3(a). As the Alaska supreme court succinctly stated in a similar case involving truck repairs, "[a] repairer does not" place a product in the stream of commerce. *Swenson Trucking & Excavating, Inc. v. Truckweld Equip. Co.* (1980), Alaska, 604 P.2d 1113, 1117, *appeal after remand* (1982), Alaska, 649 P.2d 234.

While Indiana has not spoken on the liability of a repairer for injuries caused by negligent repairs, the negligence theory espoused by § 404 is in accord with the general rule. *See Swenson Trucking, supra; Fancher v. Southwest Missouri Truck Center, Inc.* (1981), Mo.App., 618 S.W.2d 271; 65 C.J.S. Negligence § 101 (1966). I agree with the logic of the *Swenson Trucking* court and would hold that Russell's repairs are services, not sales, and that the repair work subjects Russell's to liability only for negligence, not to strict product liability under the Act.[1]

Subject to these remarks, I concur with the majority's opinion.

---

1. I also agree with the *Swenson Trucking* court's caveat: the court expressly did not decide "that a business that fabricates a vehicle or any product from used component parts, even if the customer contributes some of the parts, may not be the equivalent of a seller (either manufacturer or retailer) and hence strictly liable for defects in the completed product." *Id.* 604 P.2d at 1117. It is not inconceivable, though it is unlikely, that a repair job could entail so much replacement and reworking that, in fact, a manufacture could be said to have occurred.