**Allen BECKETT, Appellant**
**(Plaintiff Below),**

v.

**CLINTON PRAIRIE SCHOOL CORP.,**
**Appellee (Defendant Below).**

No. 12S04–8702–CV–268.

Supreme Court of Indiana.

Feb. 27, 1987.

George G. Ponton, Frankfort, for appellant.

William E. Emerick and Mark E. McGrady, Stuart & Branigin, Lafayette, for appellee.

DICKSON, Justice.

In this personal injury damage action, the trial court sustained defendant's motion for summary judgment, expressly finding: (a) Defendant-appellee Clinton Prairie School Corp. (Clinton Prairie) did not breach its duty of care to plaintiff-appellant Allen Beckett (Beckett), and (b) Beckett incurred the risk of injury as a matter of law. The Court of Appeals reversed on both issues. *Beckett v. Clinton Prairie School Corp.* (1986), Ind.App., 494 N.E.2d 988. We grant transfer, vacate the decision of the Court of Appeals, and affirm the trial court's entry of summary judgment.

The background facts were well summarized by the Court of Appeals, as follows.

On April 25, 1984, Beckett was injured while participating in baseball practice at Clinton Prairie High School. Beckett, a senior, was in his fourth year as a player on the team. Beckett was an outfielder. On the day of the injury, the outfielders practiced under assistant coach Dan Hilgedick (Coach Hilgedick) on a long and wide field south of the high school. The regular playing field was too wet for use. Coach Hilgedick conducted an outfielder's drill, in which he was the hitter. Thirty yards directly in front of him was the cut off man (freshman Kent Wein). Thirty to forty yards beyond the cut off man were the outfielders, lined up facing the hitter and approximately perpendicular to the ball's line of flight. Coach Hilgedick would hit fly balls to the outfielder on the end of the line, who would catch the ball and relay it to the cut off man, who would throw the ball to a shag man standing next to the coach. The accident occurred after Coach Hilgedick hit a high fly ball to Beckett. The wind was blowing hard and it was difficult for the players to hear. Beckett called for the ball. Meanwhile, Coach Hilgedick called for the cut off man (Wein) to catch the ball. Beckett said he did not hear Wein call for the ball. Wein said he was only to catch the ball upon receiving instructions from the coach. Neither the coach nor Wein heard Beckett call for the ball. Wein and Beckett collided head-on. Beckett suffered a broken jaw and Wein's nose was broken.

The theory of Beckett's case against Clinton Prairie is that Coach Hilgedick failed to warn Beckett of the danger of the collision, failed to adequately and reasonably supervise the practice, failed to post sufficient personnel to watch for possible collisions, conducted the practice in an unreasonably dangerous manner, and allowed supervisory personnel to participate directly in the practice.

Under Trial Rule 56 of the Indiana Rules of Procedure, a summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact, and

that the moving party is entitled to judgment as a matter of law. Any doubt as to the existence of a factual issue should be resolved against the moving party, construing the contents of all pleadings, papers, affidavits, and testimony, and reasonable inferences therefrom, in favor of the non-movant. However, summary judgment may be proper when there is no dispute regarding a fact which is dispositive of the action. *Bridgewater v. Economy Engineering* (1985), Ind., 486 N.E.2d 484; *Woodward Insurance v. White* (1982), Ind., 437 N.E.2d 59.

### Issue I

The first issue is whether the trial court erred in finding, as a matter of law, that Clinton Prairie did not breach its duty of care to Beckett. The Court of Appeals found that the school and its coaching staff owed Beckett, a team member, the duty to exercise reasonable care and supervision, and that there existed a dispute of material facts as to whether the coaches' conduct conformed to this standard. Clinton Prairie disagrees with the standard of care applied. It urges that the applicable standard of care should be lowered, and that it should be liable only if its conduct is shown to be "deliberate, willful or with a reckless disregard" for the safety of Beckett.

This Court has clearly recognized that there exists a duty on the part of school personnel to exercise ordinary and reasonable care for the safety of the children under their authority. *Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701; *Norman v. Turkey Run Community School Corporation* (1980), 274 Ind. 310, 411 N.E.2d 614.

Both *Miller* and *Norman* involved supervision at the elementary school level. Clinton Prairie contends that a less demanding standard of care should be required of school personnel supervising older children. While Beckett was eighteen years of age, he was nevertheless participating in a school activity under the supervision of school personnel which thus, as a matter of law, were under a duty to exercise *reasonable* care and supervision. Obviously, the

conduct which is reasonable in the classroom or playground supervision of seven-year-olds is quite different from that which is reasonable when coaching eighteen-year-old varsity athletes. While expressly noting that schools are not intended to be insurers of the safety of their pupils, nor are they strictly liable for any injuries that may occur to them, this Court in *Miller* held that the appropriate standard is whether a defendant exercised his duty with the level of care of an ordinary prudent person under the same or similar circumstances. Such a factual determination is generally a jury question.

■ Clinton Prairie argues that participants and spectators assume all ordinary inherent risks of the games they watch or play, and that persons responsible for conducting or supervising a sporting event should therefore be excused from the duty to use ordinary and reasonable care. We disagree. Consideration of the ordinary hazards incidental to a sporting activity, and the extent of presumed awareness thereof by participants and spectators, may well be appropriate in determining whether an actor exercised ordinary and reasonable care under the circumstances, but it certainly does not operate to diminish the required standard of ordinary and reasonable care.

■ As to this first issue, we therefore agree with the following statement of the Court of Appeals:

Viewing the facts liberally in a light most favorable to Beckett as we must, it is apparent a dispute of material fact exists as to whether Coach Hilgedick's conduct conformed to the requisite standard of care.

On the day of practice, the wind blew at a speed which made coaching commands difficult to hear. Beckett, seventy yards away from the coach, responded to the fly ball in compliance with the written instruction "outfielders have preference over infielders." Coach Hilgedick, knowing his written instructions to outfielders and the wind conditions that day which made hearing difficult, called for the cut off man to catch the

ball. It cannot be said his action under the circumstances conformed to the requisite standard of care as a matter of law.

494 N.E.2d at 990. We hold that the trial court erroneously determined as a matter of law that Clinton Prairie did not breach its duty of care to Beckett.

## Issue II

The remaining issue is whether the trial court erred in granting summary judgment on the basis of its finding that the plaintiff incurred the risk as a matter of law.

Various components of the doctrine of incurred risk were effectively synthesized in a definition of the doctrine of incurred risk as presented by Judge Ratliff in *Power v. Brodie* (1984), Ind.App., 460 N.E.2d 1241, 1243:

It involves a mental state of venturousness on the part of the actor, and demands a subjective analysis into the actor's actual knowledge and voluntary acceptance of the risk. By definition ... the very essence of incurred risk is the conscious, deliberate and intentional embarkation upon the course of conduct with knowledge of the circumstances. It requires much more than the general awareness of a potential for mishap. Incurred risk contemplates acceptance of a specific risk of which the plaintiff has *actual* knowledge. [emphasis in original] [citations omitted]

Ever since Judge Sullivan's comprehensive and thorough opinion comparing and distinguishing the defenses of contributory negligence and incurred risk in *Kroger Co. v. Haun* (1978), 177 Ind.App. 403, 379 N.E.2d 1004, there has been general agreement that incurred risk demands a subjective analysis focusing upon the actor's actual knowledge and voluntary acceptance of the risk. The *Kroger Co.* opinion states:

We are of the belief that to hold that one may voluntarily incur a risk of which he had no actual knowledge, yet was required to know in the exercise of ordinary care, is a perversion of the doctrine. Failure to recognize a danger or risk may constitute unreasonable conduct

and, therefore, contributory negligence, but it should never be considered a voluntary incurrance of a known risk.

177 Ind.App. at 410, 379 N.E.2d at 1009. This requirement of subjective analysis to determine actual knowledge of a plaintiff charged with the defense of incurred risk has been repeatedly recognized and emphasized. *Gates v. Resenogle* (1983), Ind.App., 452 N.E.2d 467, 473; *Colaw v. Nicholson* (1983), Ind.App., 450 N.E.2d 1023, 1029; *Dibortolo v. Metropolitan School District of Washington Township* (1982), Ind.App., 440 N.E.2d 506, 511; *Antcliff v. Datzman* (1982), Ind.App., 436 N.E.2d 114, 120; *Moore v. Moriarity* (1981), Ind.App., 415 N.E.2d 779, 782.

Defendant's argument would require that, contrary to this line of decisions, the subjective test be discarded when sports events are involved. Defendant urges that we consider the decisions of the Court of Appeals in *Sprunger v. East Noble School Corporation* (1986), Ind.App., 495 N.E.2d 250, and *Emhardt v. Perry Stadium* (1943), 113 Ind.App. 197, 46 N.E.2d 704.

In *Sprunger*, a baseball spectator suffered injury when struck by a batting weight. The plaintiff appealed from an adverse grant of summary judgment, contending that there was a genuine issue of fact as to whether the player using the weight was negligent. Relying upon *Emhardt* as supporting authority, the *Sprunger* opinion utilized an objective analysis:

> In other words, spectators attending baseball games are *charged with knowledge* that such things as bats and balls are occasionally hit or thrown into unscreened spectator areas. By electing to attend, they agree to accept the *ordinary* risks thereof. [Emphasis added]

495 N.E.2d at 252. *Emhardt* involved a plaintiff who was injured when another spectator tried to throw back to the playing field a baseball which had been fouled off into the stands. While the *Emhardt* opinion does contain language that the danger "seems to us to be an ordinary hazard of the game," 113 Ind.App. at 202, 46 N.E.2d at 706, the court there expressly noted

facts showing the subjective determination of actual knowledge:

> [Appellant] *knew* the danger from foul balls and the danger from such balls being thrown back by spectators. * * * Appellant *knew* of such hazard when she voluntarily chose the unprotected place to sit. [Emphasis added]

*Id.* Thus *Sprunger* incorrectly relied upon *Emhardt* to support the use of an objective analysis for determining incurred risk in cases involving sports events.

■ We are not persuaded to dispense with the well-established requirement that incurred risk be determined by subjective analysis. It is neither necessary nor appropriate for sports events to be distinguished and given such special treatment.

■ While we emphasize actual knowledge as a prerequisite element of incurred risk, we recognize that the viability of the defense, as well as the function of summary judgment, would be subverted if a plaintiff's denial of actual knowledge were unassailable, automatically insulating the plaintiff. As recognized in Prosser, *Law of Torts*, p. 448 (4th ed. 1971), "[a]t the same time, it is evident that a purely subjective standard opens a very wide door for the plaintiff who is willing to testify that he did not know or understand the risk." While the determinative question remains the plaintiff's subjective knowledge and state of venturousness, we observe that plaintiff's actual knowledge may be proven by circumstantial evidence notwithstanding the absence of a plaintiff's admission of such knowledge.

■ In the present case, however, we need not evaluate whether there is adequate circumstantial evidence of actual knowledge. From our review of the record, we are satisfied that plaintiff's actual knowledge is conclusively shown, and that the trial court correctly determined that Clinton Prairie was entitled to summary judgment on the issue of incurred risk. While the plaintiff at one point in his deposition stated that he never heard of baseball players colliding and that he had no knowledge of any kinds of accidents happening on baseball fields, the other detailed

admissions in his deposition provided unequivocal evidence of actual knowledge and appreciation of this specific risk involved:

96. Q. Now, you say this—you participated in that drill many times, is that right?
A. Yeah.

97. Q. During your 4 years at Clinton Prairie?
A. Yeah.

98. Q. Have there been times when the cut off man has drifted back to catch a ball that was hit off the bat of the coach?
A. Yeah.

99. Q. And you see that player drift back and make those catches, haven't you?
A. Yeah.

* * * * * *

128. Q. Have you ever been warned by the coaches that if you don't communicate a collision could occur?
A. Yeah, they are always talking communication.

129. Q. Why do they do that?
A. So there is not an accident—prevent.

120. Q. So there will not be a collision between two players, is that right?
A. Prevent accidents.

* * * * * *

252. Q. You think it's possible you called for it and Kent may not have heard you?
A. Yeah.

253. Q. And it's possible that that could have been caused by the wind blowing?
Q. Yeah. When it gets windy like that you can't hear much, especially at that distance but there is a question in my mind about it.

254. Q. And you understand that the wind blows and your voices sometimes get lost in the wind?
A. Yeah.

* * * * * *

296. Q. Could the same type of thing happen in a game as happened to you on that day? Let me set it out for you. Let's say you are playing in a game and you are playing center field, Kent's playing shortstop. The ball is hit somewhere behind second base, a little Texas leaguer type fly, alright, you're chasing it, Kent's chasing it ...
[Objection omitted]
and the ball is hit between the two of you and you are calling for it and Kent is calling for it but neither of you hear each other and you two collide. Can that happen in a game?
[Objection omitted]

297. Q. O.K. do you understand my question?
A. Yeah.

298. Q. Could that happen in a game?
A. Anything could happen.

299. Q. What do you mean ... You saying now a collision can happen?
A. It could of happened, yeah. Just like it did in practice.

300. Q. Did you understand that before you went out to practice that day?
A. (No audible answer)

301. Q. Is that a yes or no?
A. Yeah.

302. Q. O.K., so you understood that a collision could happen before you went out to practice that day, is that fair to say?
A. Yeah.

Applying the requirement of subjective analysis, we find the defense of incurred risk shown as a matter of law.

Therefore, notwithstanding the trial court's error on Issue I, it correctly found on Issue II that the plaintiff incurred the risk of injury as a matter of law, and properly entered summary judgment against plaintiff. Judgment affirmed.

GIVAN, C.J., and DeBRULER and SHEPARD, JJ., concur.

PIVARNIK, J., concur in result only without opinion.