**Margie A. BENANTE, Appellant–Plaintiff Below,**

v.

**UNITED PACIFIC LIFE INSURANCE COMPANY, Appellee–Defendant Below,**

**and**

**Joseph Z. Kobielak, Non–Party to Appeal (Defendant Below).**

No. 37A03–9307–CV–00236.

Court of Appeals of Indiana, Third District.

Sept. 8, 1994.

Rehearing Denied Jan. 18, 1995.

Mark A. Thiros, Cohen & Thiros, Merrill-ville, for appellant.

Karen L. Hughes, Daniel A. Medrea, Lucas, Holcomb & Medrea, Merrillville, for appellee.

STATON, Judge.

Margie Benante prevailed upon her conversion claim against Joseph Kobielak and United Pacific Life Insurance Company ("UPL"); the judgment was modified upon motion to correct error. Benante appeals and seeks additur; UPL cross-appeals and seeks reversal or remittitur. Seven issues are presented for this court's review. One issue is dispositive: whether UPL was entitled to judgment on the evidence because there is an absence of evidence that Kobielak acted as the agent of UPL when he converted funds belonging to Benante.

We reverse.

The facts underlying this appeal are uncontroverted. Kobielak was licensed to sell life and disability insurance in the State of Indiana. He sold insurance products of various companies, including UPL. Benante contacted Kobielak after hearing his radio presentation concerning investment opportunities.

Benante advised Kobielak that her current investments were unsatisfactory because she had incurred stock market losses and was required to contend with excessive paperwork. Benante provided Kobielak with her tax records so that he could ascertain the extent of the assets available for liquidation and investment.

Kobielak offered Benante various financial services; he prepared Benante's tax returns, sold Benante a bag of silver, invested family funds through Dean Witter and procured a life insurance policy for Benante from Lafayette Life Insurance.[1]

Eventually, Benante liquidated an E.F. Hutton investment account and tendered the funds to Kobielak. Kobielak informed Benante that he would invest her funds in a UPL annuity called "Auto 7" when the interest rate payable thereon reached 9%. Pursuant to Kobielak's instructions, Benante executed two checks payable to "Kobielak and Associates" totalling $84,000.00. Kobielak advised Benante against entering "Auto 7" in the memorandum section of a check because the reference would be "confusing" since her funds would first be held in either a "mutual fund" or "money market account." Record, pp. 1004–7. Benante signed forms filled out by Kobielak and received a file folder marked "Auto 7."

---

1. Benante gave Kobielak $50,000.00 to purchase a life insurance policy from Lafayette Life Insurance Company. She confronted Kobielak after learning that he had tendered only $12,000.00 to Lafayette; Kobielak gave Benante a cashier's check in the amount of $50,000.00. Lafayette cancelled Benante's life insurance policy and paid Benante the sum of $20,000.00, in settlement of her conversion claim against Lafayette.

Benante subsequently learned that Kobielak had not purchased a UPL annuity for her. She sought full restitution from Kobielak, but he returned only $10,000.00. Benante unsuccessfully sought to recover the balance from UPL. Ultimately, she brought a conversion action against both Kobielak and UPL.[2]

At the conclusion of Benante's case-in-chief and at the conclusion of the defense, UPL moved for judgment on the evidence. UPL contended that the tortious conduct of an independent insurance agent who procures policies through various companies cannot be imputed to the insurer because he acts as the agent of the proposed insured. UPL's motions were denied.

■ The purpose of a motion for judgment on the evidence is to test the sufficiency of the evidence. *City of Crawfordsville v. Michael* (1985), Ind.App., 479 N.E.2d 102, 103, *trans. denied.* Where the issues tried are not supported by sufficient evidence or a verdict is clearly erroneous as contrary to the evidence, the court shall withdraw such issues from the jury and enter judgment thereon. Ind.Trial Rule 50(A). When the trial court considers a motion for judgment on the evidence, it must view the evidence in a light most favorable to the non-moving party. Judgment may be entered only if there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the claim. On appeal, we use the same standard of review as the trial court in determining the propriety of a judgment on the evidence. *Dahlin v. Amoco Oil Corp.* (1991), Ind.App., 567 N.E.2d 806, 810, *trans. denied; Sipes v. Osmose Wood Preserving Co.* (1989), Ind., 546 N.E.2d 1223, 1224.

■ Benante established by uncontroverted evidence that Kobielak converted her funds; the judgment against Kobielak is not challenged upon appeal. However, UPL is liable for the tortious conduct of Kobielak only if Kobielak was an agent of UPL acting within the actual or apparent scope of his authority. Vicarious liability will be imposed only where a principal has the right or power to control the conduct of the agent:

"The general rule that a principal is liable for the torts of his agent is not grounded on agency principles ... The tort liability is based on the employer and employee, rather than any agency, principle[.] ... [I]n our system of tort liability based upon fault, it is the right of the party sought to be held liable to control the conduct of the person who actually caused the injury that creates the necessary nexus."

*Dallas Moser Transporters, Inc. v. Ensign* (1992), Ind.App., 594 N.E.2d 454, 456–57, *reh. denied.*

Generally, an insurance agent representing several companies is considered to be an insurance broker. An insurance agent or broker who undertakes to procure insurance for another is an agent of the proposed insured. *Stockberger v. Meridian Mut. Ins. Co.* (1979), 182 Ind.App. 566, 395 N.E.2d 1272, 1278–79. Accord: *Anderson Mattress Co., Inc. v. First State Ins. Co.* (1993), Ind. App., 617 N.E.2d 932, 939, *trans. denied; Craven v. State Farm Mut. Auto. Ins. Co.* (1992), Ind.App., 588 N.E.2d 1294, 1296.

Indiana courts have consistently determined that an insurance broker becomes the agent of the insurer when an insurance policy is issued:

"[T]he Court of Appeals correctly observed that in Indiana when a broker makes application for insurance and the insurance policy is issued, the broker is the agent of the insurer and can bind it within the scope of his authority."

*Aetna Ins. Co. of the Midwest v. Rodriguez* (1988), Ind., 517 N.E.2d 386, 388, *reh. denied.*

"[A]n agent like Wren, who operates an independent insurance agency representing several insurers, is considered a broker.... In such a situation, the broker is normally deemed to be an agent of the buyer, not the insurer, and the insurer is not liable for the broker's tortious conduct. When, however, the 'broker makes application for insurance and the insurance policy is issued, the broker is the agent of the

---

**2.** Kobielak did not appear and a default judgment was entered against him.

insurer and can bind it within the scope of his authority.' "

*Callis v. State Auto. Ins. Co.* (1991), Ind. App., 579 N.E.2d 129, 131, *trans. denied* (citations omitted).

Pursuant to a "general agent agreement," Kobielak was authorized to "solicit applications and collect first premiums for Authorized Policies and remit the premiums immediately to the Company (UPL)." Record, p. 830. UPL applications included a pre-printed directive to attach checks payable to "United Pacific Life."

However, the uncontroverted evidence discloses that Kobielak never applied for a UPL "Auto 7" annuity (or any other UPL product) on Benante's behalf. No checks payable to UPL were collected from Benante; no cash funds were tendered to UPL on Benante's behalf. No policy or annuity was ever issued by UPL for Benante. Thus, Kobielak remained the agent of Benante; UPL is not liable for his tortious conduct.

We reverse and remand with instructions to the trial court to enter judgment on the evidence in favor of UPL.

HOFFMAN, J., concurs and files separate opinion.

RUCKER, J., dissents and files separate opinion.

HOFFMAN, Judge, concurring.

I concur.

Here Kobielak was not only acting as a broker but also as a financial advisor. The money given to Kobielak was to purchase "Auto 7" in the future and was to be placed in a "mutual fund" or "money market account" in the interim. Kobielak was acting as an agent for Benante.

RUCKER, Judge, dissenting.

I respectfully dissent. Whether or not Kobielak was acting as an agent of UPL is a question of fact to be decided by the jury.

I agree with the majority that in general an insurance agent who represents several companies is considered a broker and thus his or her negligence may not be imputed to the insurer. *Automobile Underwriters, Inc. v. Hitch* (1976), 169 Ind.App. 453, 349 N.E.2d 271. However, this general proposition is not set in concrete. Rather, an insurance agent may nonetheless be considered the agent of a single insurance company even though he or she represents more than one company. The facts of each case must be examined. *See Tynes v. Bankers Life Co.* (1986), 224 Mont. 350, 360, 730 P.2d 1115, 1122 (agent who sold insurance for several different companies was an agent and not a broker with respect to company with whom he enjoyed a fixed or permanent relationship of more than thirty-seven years); *Sorapuru v. Jeffers* (1979), La.App., 378 So.2d 524, 526 (fact that agent could write insurance for more than one company was not conclusive as to question of his agency for defendant insurer; rather, evidence of agent's role in transaction at issue was sufficient to establish agency).

A "broker" is defined as one who acts as middleman between the insured and the insurer and who solicits insurance from the public under no employment from any specific company. *Electro Battery Mfg. Co. v. Commercial Union Ins. Co.*, 762 F.Supp. 844, 848 (E.D.Mo.1991); 16 John Alan Appleman & Jean Appleman, Insurance Law & Practice § 8726 (1981); 3 George J. Couch et al., Couch on Insurance 2d § 25:93 (1984). He enjoys no fixed or permanent relationship to an insurer but rather holds himself out for employment by the general public. *Gerdes v. John Hancock Mut. Life Ins. Co.*, 712 F.Supp. 692, 699 (N.D.Ill.1989); 16 Appleman, *supra* § 8726. A broker is ordinarily employed by a person seeking insurance, his task being that of establishing contact with many companies in order to obtain the best deal he can for the insured rather than having allegiance to any one company. 16 Appleman, *supra* § 8726, at 339, § 8730, at 360–61. As a general rule, an insurance broker is the agent of the insured, and not of the insurer. *Stoddard v. Continental Ins. Co.*, 702 F.Supp. 275, 280 (D.Wyo.1988); 16 Appleman, *supra* § 8727, at 341–42. He thus has no authority to bind the insurer by his acts or omissions. *Callis v. State Auto. Ins. Co.* (1991), Ind.App., 579 N.E.2d 129, *trans. denied; Stockburger v. Meridian Mut. Ins.*

Co. (1979), 182 Ind.App. 566, 395 N.E.2d 1272; 16 Appleman, *supra* § 8730, at 360, 363.

On the other hand an insurance "agent" is one who is expressly or impliedly authorized to represent an insurance company in dealing with third persons in matters relating to insurance. *Manzella v. Paul Revere Life Ins. Co.*, 872 F.2d 96, 98 (5th Cir.1989) quoting 16 Appleman, *supra* § 8725, at 332. An insurance agent is tied to his company and represents the insurer under an employment by the company. *Id.;* 3 Couch, *supra* § 25:93, at 442–43. An insurance company is bound by the acts of its agents performed within the scope of the agents' authority. *Aetna Ins. Co. of the Midwest v. Rodriguez* (1988), Ind., 517 N.E.2d 386, 388, *reh. denied;* 4 Couch *supra* § 26A:263. Thus, the knowledge, mistakes, and omissions of an agent are those of his principal where the agent is authorized to act concerning the matter. 4 Couch, *supra* § 26A:264, at 501.

In determining whether one is a broker or an agent, it is necessary to consider the facts and circumstances of the case, the relation of the parties, their actions, their usual course of dealing, any instructions given to the person by the company, the conduct of the parties generally, and the nature of the transaction. *Weinisch v. Sawyer* (1991), 123 N.J. 333, 344, 587 A.2d 615, 620; *American Ins. Co. v. Freeport Cold Storage, Inc.*, 703 F.Supp. 1475, 1480 (D.Utah 1987); 3 Couch, *supra* § 26:30. Facts evidencing an agency relationship include the presence of the company's sign in the agent's office, use of the company's stationery, and use of preprinted application forms bearing the company's name. *Randall v. Alan L. Rankin Ins., Inc.* (1987), 38 Ohio App.3d 87, 90, 526 N.E.2d 97, 100; 44 C.J.S. *Insurance* § 192, at 367 (1993).

In the case before us UPL presented evidence that Kobielak represented more than one insurance company and that he provided various services for Benante at her request. In addition, the agency agreement between Kobielak and UPL provided that Kobielak's relationship to the company was that of independent contractor and that "[n]othing contained in this Agreement shall be construed to create the relationship of employer and employee. . . ." *Record* at 830. At first blush therefore it would appear, as the majority concludes, that Kobielak was a broker whose negligent acts were not imputed to UPL. However, the record reveals that despite the provision in the agreement describing Kobielak as an independent contractor, the agreement lists a number of responsibilities owed by Kobielak to the company and provides that the company shall have the right to approve the hiring of any sub-agents by Kobielak and that it may mandate termination of any contracts between Kobielak and his sub-agents. In addition, the record reveals that UPL supplied Kobielak with brochures and applications for insurance which he used in soliciting business for UPL.

Thus, although there was evidence tending to establish that Kobielak acted merely as a broker, there was also evidence, although slight, suggesting that Kobielak was employed by UPL as its agent. Whether Kobielak in fact served as agent for UPL and whether a master-servant relationship existed such that UPL was liable for torts committed by Kobielak are issues of fact properly reserved for the jury. *See Green v. Perry* (1990), Ind.App., 549 N.E.2d 385, 387, *trans. denied;* 4 Couch, *supra* § 26A:280, at 539. Likewise, the question of whether Kobielak was acting within the scope of his authority at the time of his tortious acts is one best left for jury determination. *See* 4 Couch, *supra* § 26A:265, at 510.

When viewed in a light most favorable to Benante the evidence before the trial court did not support UPL's motion for judgment on the evidence. The trial court properly denied the motion and submitted the matter to the jury. I find no error. Therefore I dissent and would affirm the judgment of the trial court.