Roosevelt WARD, Sr., and William Ward and Roosevelt Ward, Jr., as the Guardians of Roosevelt Ward, Sr., Appellants–Plaintiffs,

v.

ST. MARY MEDICAL CENTER OF GARY, Jane Doe, and/or John Doe, whose true and Christian names are unknown and Sonja Tarnow, who are employees and/or agents of the Defendant, St. Mary Medical Center Of Gary and George D. Smalls, M.D., Appellee–Defendant.

No. 45A03–9401–CV–19.

Court of Appeals of Indiana, Third District.

Jan. 30, 1995.

---

John M. Kopak, Merrillville, for appellant.

Randall J. Nye, Beckman, Kelly & Smith, Hammond, for appellee.

## OPINION

STATON, Judge.

This is an appeal from a medical malpractice action which presents two issues. The first issue is presented by Roosevelt Ward, Sr., ("Ward"). It is whether the trial court erred in vacating its judgment and declaring

a mistrial after receiving the jury's collective statement impeaching its verdict. The second issue is presented by St. Mary Medical Center of Gary ("St. Mary") in its cross-appeal. It is whether the trial court erred in denying St. Mary's motion for judgment on the evidence. Before considering these issues, we will have to determine whether the trial court's order declaring a mistrial is an appealable final order under Ind.Appellate Rule 4(A). No Indiana cases have yet addressed this question.

We affirm.

The relevant facts reveal that Ward's medical malpractice action arose when he suffered a tear in his bladder after a needle biopsy of his prostate performed at St. Mary. His complaint alleged that his doctor, several members of St. Mary's nursing staff, and the hospital were negligent in treating Ward after the procedure.[1]

Ward's claim was tried to a jury. During deliberations, the jury sent a note to the trial court requesting to make a statement before or after their verdict was read. After consulting with each parties' counsel, and upon failure of either counsel to make any objection, the trial court informed the jury that they could make a statement after delivering their verdict. The jury returned a verdict in favor of Ward, assessing damages against St. Mary in the amount of $226,795.00. After polling the jury, the trial court entered judgment on the jury's verdict.

Thereafter, the trial court permitted the jury to make the following statement:

'We, the Jury, find no negligence in the standard of care given to Mr. Roosevelt Ward, Sr., but do find a lack of aggressive care given to Mr. Roosevelt Ward., Sr., during the critical time period of 10 o'clock p.m. to 12 o'clock p.m [sic], the night of September 14.' We came up with the amount going one-third to the lawyer, one-third going to Great Lakes HMO, and Mr. Roosevelt Ward. We come up [sic] with the figure of $1,000.00 approximately per day for suffering. And that is what the Jury—this is very hard for a Jury to come

up with. That's what we came up with, Your Honor.

Record, p. 300. The court responded as follows:

I think at this time, in light of the statement made by the Jury, I'm going to have to withhold entering judgment on the verdict of the Jury. Therefore, the Court's previous entry of judgment on the verdict is vacated....

Record, p. 300. The trial court again polled the jury to ensure their individual agreement with the collective statement. After hearing arguments of counsel, the trial court addressed the jury as follows:

You were told as a part of the instructions that were given to you by the Court that there must be first a finding of negligence on the part of the defendant which proximately caused the injury complained of before you could in any way award any damages.

Now the statement which you submitted to the Court, indicates that, in part, 'We, the Jury, find no negligence in the standard of care given to Mr. Roosevelt ward, Sr.' Obviously, the award of damages that you made ... is inconsistent with that statement, and results in the defendant being held responsible for conduct which you say was not negligent.

The verdict by you is for a substantial amount of money. The Court feels that it cannot allow in the interests of justice for his type of award to exist with the apparent basic misunderstanding of the Jury as to how they should have proceeded in order to reach their verdict.

It would not be appropriate at this time to allow the jurors to continue their deliberations, since both parties should be entitled to a fresh playing field.

Record, pp. 338–339. On this basis, the trial court entered the following order:

A. The verdict of the Jury is held to be of no effect and is withdrawn.

---

1. Dr. George D. Smalls' motion for summary judgment was granted by the trial court, and Nurse Sonja Tarnow was dismissed from the action by stipulation of the parties. St. Mary is thus the only named defendant remaining in the litigation.

B. A mistrial in this case is hereby declared. This case shall be reset for trial upon request of the parties.

Record, p. 339. It is from this order that the parties appeal.

# I.

## *Finality of Order*

■ The parties to this appeal challenge the trial court's order declaring a mistrial. The Indiana Rules of Appellate Procedure provide that "[a]ppeals may be taken by either party from all final judgments of circuit, superior, probate, criminal, juvenile, county, and where provided by statute for Municipal Courts." App.R. 4(A). Our courts define a final judgment under this rule as an order or judgment which disposes of all issues as to all parties, thereby ending the particular case. *Doperalski v. City of Michigan City* (1993), Ind.App., 619 N.E.2d 584, 585. However, our courts have not yet had occasion to address whether a mistrial order is a final judgment under App.R. 4(A).

■ A mistrial is "[a]n erroneous, invalid or nugatory trial ...[,] [a] device used to halt trial proceedings when error is so prejudicial and fundamental that expenditure of further time and expense would be wasteful if not futile." BLACKS LAW DICTIONARY 1002 (6th Ed.1990). Generally, an order declaring a mistrial and continuing a case on the court's docket is not an appealable final judgment. *See Donofrio v. Amerisure Insurance Company* (1990), 67 Ohio App.3d 272, 274, 586 N.E.2d 1156, 1157; *Robbins v. Van Gilder* (1993), 225 Conn. 238, 249–250, 622 A.2d 555, 561; *Estate of Busing v. Brohan* (1990), Fla.Dist.Ct.App., 567 So.2d 6, 7–8.

The Ohio Court of Appeals recently recognized an exception to this general rule when a mistrial is ordered after the jury returns a verdict. *Donofrio, supra. Donofrio* involved a breach of contract claim in which the jury reached a verdict in favor of the defendant insurance company. In a second jury poll, one juror retracted her assent to the verdict;

thereafter the trial judge declared a mistrial and discharged the jury. *Id.* at 274, 586 N.E.2d at 1157. Under such circumstances, the Ohio court reasoned that the grant of a mistrial motion has the practical effect of granting a new trial. By statute, a new trial order in Ohio is a final appealable judgment. OHIO REV.CODE § 2505.02. Thus, "after a jury returns with a verdict and the trial court grants a mistrial motion.... such an order is a final order appealable to this court." *Id.* at 275, 586 N.E.2d at 1158.

We find this rationale applicable to the case at bar, in which the defect prompting the mistrial order was not apparent until after the jury rendered its verdict. Under such circumstances, the trial court's order has the practical effect of granting a new trial. In fact, the order at issue in this case explicitly reset the matter for trial. Record, p. 339. Indiana law equates a ruling granting a new trial to a final judgment from which appeal may be taken. IND.CODE § 34–1–47–1(b) (1993). Because we believe a mistrial order under these circumstances is analogous to a new trial order, we conclude such mistrial order is a final judgment under App.R. 4(A). This appeal is thus properly before this court.

# II.

## *Mistrial*

■ The trial court has discretion in determining whether to grant a mistrial, and its decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of the event and its impact on the jury. *Schlomer v. State* (1991), Ind., 580 N.E.2d 950, 955. To prevail on appeal, appellant must show that he was so prejudiced that he was placed in a position of grave peril to which he should not have been subjected. *Id.*

Ward argues that the trial court abused its discretion by allowing the jury's written statement to impeach its verdict.[2] It is well

---

2. In support of his position, Ward argues that the trial court erroneously ordered a new trial without entering special findings pursuant to Ind.Trial Rule 59(J)(7). This reliance is misplaced.

T.R. 59(J)(7) governs relief granted after the filing of a motion to correct error. No motion to correct error was filed in this case.

settled that a verdict may not be impeached by the testimony or affidavit of the jurors who return it. *Knight v. Parke* (1992), Ind. App., 595 N.E.2d 280; *Stauffer v. Lothamer* (1981), Ind.App., 419 N.E.2d 203, 217, *trans. denied.* The rationale underlying this rule is as follows:

> 'If this Court were to permit individual jurors to make affidavits or give testimony disclosing the manner of deliberation in the jury room and their version of the reasons for rendering a particular verdict, there would be no reasonable end to litigation. Jurors would be harassed by both sides of litigation and find themselves in a contest of affidavits and counter-affidavits and arguments and re-arguments as to why and how a certain verdict was reached. Such an unsettled state of affairs would be a disservice to the parties litigant and an unconscionable burden upon citizens who serve on juries.'

*Stauffer, supra* at 218 (quoting *Stinson v. State* (1974), 262 Ind. 189, 198, 313 N.E.2d 699, 704). Our courts have declined to create an exception to this rule when the juror volunteers impeaching information, because "such practice may nevertheless create a situation where 'no jury verdict would ever be lasting or conclusive.'" *Id.* (quoting *Jessop v. Werner Transportation* (1970), 147 Ind. App. 408, 413, 261 N.E.2d 598, 601, *trans. denied* ).

■ This jurisdiction has not had occasion to address the applicability of this general rule in the unusual circumstances of this case, in which the jury's verdict was impeached by its own collective statement, formulated during deliberations and delivered while the jury was still impaneled. We conclude that an exception to the general rule is warranted under these limited circumstances, in which the policy concerns outlined above are inapplicable. There was no evidence of juror harassment; the jury formally requested to make a collective statement. The statement was made to the court, with both parties present and stating no objection, prior to the jury's discharge. Moreover, because we expressly limit this exception to the facts before this court, it does not undermine the ordinary conclusiveness of jury verdicts.

■ The written statement of the jury revealed a misapplication of the law: the jury explicitly found no liability for negligence, but went on to assess damages against St. Mary. When it became apparent to the trial court that the jury made this fundamental legal mistake, the court ordered a mistrial, determining that under the circumstances the parties were entitled to a "fresh playing field". Record, pp. 338–339. The trial court was in the best position to gauge the impact of the jury's misunderstanding of the law on any subsequent deliberations. *Schlomer, supra.* Under such circumstances, we conclude that the trial court's order was a proper exercise of its discretion.

### III.

#### *Judgment on the Evidence*

■ In its cross appeal, St. Mary argues that the trial court erred in denying St. Mary's motion for judgment on the evidence, which was renewed after the jury's collective statement. This court employs the same standard of review as the trial court in determining the propriety of a judgment on the evidence. *Dahlin v. Amoco Oil Corp.* (1991), Ind.App., 567 N.E.2d 806, 810, *trans. denied.* When the trial court considers a motion for judgment on the evidence, it must view the evidence in a light most favorable to the non-moving party. Judgment may be entered only if there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the claim. *Id.; Sipes v. Osmose Wood Preserving Co.* (1989), Ind., 546 N.E.2d 1223, 1224.

■ In a medical negligence action, the plaintiff must establish by a preponderance of the evidence the following essential elements: 1) the standard of care owed to the patient, 2) a breach of that standard by defendant, and 3) as a proximate result of the defendant's breach, the plaintiff suffered a compensable injury. *Planned Parenthood of Northwest Indiana v. Vines* (1989), Ind.App., 543 N.E.2d 654, 660, *trans. denied.* A nurse must meet the standard of care of a reasonable nurse practicing the profession in the community. *Id.,* (quoting *Cooper v. National Motor Bearing Co.* (1955), 136 Cal.App.2d

229, 288 P.2d 581, 587). The standard of care and breach thereof must be established by expert testimony. *Id.*

St. Mary first argues that judgment on the evidence is appropriate because Ward failed to establish through expert testimony that his treating nurse breached the standard of care. We disagree. Two nurses, as well as the physician expert employed by St. Mary, testified that the applicable standard of care requires a nurse to follow the physician's orders unless the health of the patient dictates otherwise. Ward's treating nurse testified that she did not follow the physician's order to use a toomey syringe to irrigate Ward's bladder.[3] This expert testimony, viewed in the light most favorable to Ward, is sufficient to raise an inference that Ward's nurse breached the standard of care.

St. Mary next argues that judgment on the evidence is appropriate because Ward did not present sufficient expert testimony on the causation element of Ward's claim. Again, we disagree. Ward admitted into evidence the report by Dr. George D. Small, Ward's treating physician, indicating that the tear in Ward's bladder occurred during the nurse's irrigation of Ward's catheter with the bulb syringe. Dr. Small testified that he ordered the nurse to use a toomey syringe to irrigate Ward's bladder because it is more successful in dislodging large clots in the catheter. Supp.Record, p. 169. From this evidence the jury could reasonably infer that the nurse's failure to use the ordered syringe caused Ward's injury.

Because there is sufficient evidence from which the jury could infer the essential elements of Ward's claim, judgment on the evidence was properly denied.

Affirmed.

HOFFMAN and SULLIVAN, JJ., concur.

---

**3.** Ward's treating nurse testified that she did not use the type of syringe ordered by Ward's physician because such was not readily available. However, the reasonableness of the nurse's ac-tions in light of the standard of care is a genuine issue of material fact properly resolved by the jury, and not by judgment on the evidence.