**TOWN OF HIGHLAND, Appellant–Defendant,**

v.

**Joyce ZERKEL, Appellee–Plaintiff.**

**No. 45A04–9411–CV–467.**

Court of Appeals of Indiana.

Dec. 29, 1995.

Transfer Denied May 17, 1996.

---

**1116**

Michael C. Adley, Abrahamson, Reed & Adley, Hammond, for appellant.

Barry D. Sherman, Kristen D. Hill, Joseph P. Allegretti, Sherman & Allegretti, Hammond, for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Town of Highland (Highland) appeals from the trial court's judgment in favor of Joyce Zerkel (Zerkel) in her suit for damages following her trip and fall on a defective public sidewalk.

We affirm.

### ISSUES

Highland presents the following re-stated, consolidated issues:

1. Whether the trial court erred by excluding evidence of Zerkel's receipt of collateral source payments.

2. Whether the trial court erred by determining that Highland was not entitled to "discretionary function" tort immunity.

3. Whether the trial court erred by denying Highland's motion for judgment on the evidence.

4. Whether the trial court erred by failing to find Zerkel contributorily negligent as a matter of law.

5. Whether the trial court erred by failing to find that Zerkel incurred the risk of her injury as a matter of law.

6. Whether the trial court erred by instructing the jury that Highland's duty to exercise reasonable care does not depend upon budgetary considerations.

### FACTS AND PROCEDURAL HISTORY

On March 4, 1992, while walking her dog, Zerkel tripped and fell over an elevated portion of cracked sidewalk at or near 9406–9410 Saric Drive in Highland, Indiana.[1] Zerkel lived at 9442 Saric Drive for 33 years and frequently walked the sidewalks in her neighborhood. As a result of her fall, Zerkel sustained serious, permanent injuries and incurred medical expenses in excess of $35,000.

Zerkel filed her complaint against Highland on August 11, 1992, alleging that Highland was negligent in failing to keep its sidewalk in a reasonably safe condition for pedestrian travel. In its answer, Highland denied any negligence and raised eight affirmative defenses. Highland additionally argued that it was entitled to immunity under the Indiana Tort Claims Act.[2] Highland filed its first motion for summary judgment in August of 1993, asserting that it was entitled to judgment as a matter of law because Zerkel was contributorily negligent and voluntarily assumed the risk of her injuries. The court denied Highland's motion. Highland filed a subsequent motion for summary judgment asserting that it was entitled to discretionary function immunity. Following a hearing on this motion, the court denied Highland's motion.

A jury trial was held August 2nd and 3rd, 1994. The jury returned a verdict for Zerkel and awarded her $250,000 in damages. The trial court entered judgment on the verdict on August 3, 1994. Highland now appeals. Additional facts and procedural history will be provided as necessary.

### DISCUSSION AND DECISION

#### I. The Collateral Source Rule

Highland contends that the trial court erred by excluding evidence of collateral source payments received by Zerkel. Zerkel's medical expenses were paid by her employer and her husband's employer. Zerkel

---

1. Saric Drive runs north and south. At the time of her fall, Zerkel was on the west side of the street headed south.

2. The Indiana Tort Claims Act is codified at Ind.Code 34–4–16.5–1 through 34–4–16.5–22.

also received disability payments from her employer.[3]

Prior to trial, Zerkel filed a motion seeking to prohibit Highland from introducing any evidence regarding the collateral source payments. The court granted the motion. At trial, Highland made an offer to prove that, if permitted, it would have asked Zerkel whether her medical bills were paid by insurance and whether she received disability benefits from her employer.

■ Ruling on the admissibility of evidence is a matter left to the sound discretion of the trial court. We will not disturb the decision of the trial court absent an abuse of that discretion. *S.A. v. State* (1995), Ind. App., 654 N.E.2d 791, 794, *trans. denied.* Furthermore, in Indiana we have a statute which presumably guided the trial court to exclude the collateral source evidence.

Prior to 1986, Indiana followed the common law collateral source rule which prohibited a wrongdoer from benefitting from compensation for loss received by a plaintiff from a source independent of the wrongdoer. *See Barnes v. Barnes* (1992), Ind., 603 N.E.2d 1337, 1346. However, in 1986, our Legislature essentially abolished the collateral source rule with the enactment of I.C. 34-4-36-1 *et. seq.*

The statutory section governing the admissibility of collateral source benefits in Indiana provides as follows:

In a personal injury or wrongful death action the court shall allow the admission into evidence of:

(1) proof of collateral source payments, other than:

(A) payments of life insurance or other death benefits;

(B) insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly; or

(C) payments made by the state or the United States, or any agency, instrumentality, or subdivision thereof, that have been made before trial to a plaintiff as compensation for the loss or injury for which the action is brought;

(2) proof of the amount of money that the plaintiff is required to repay, including worker's compensation benefits, as a result of the collateral benefits received; and

(3) proof of the cost to the plaintiff or to members of the plaintiff's family of collateral benefits received by the plaintiff or the plaintiff's family.

I.C. 34-4-36-2 (1993). I.C. 34-4-36-1 (1993) provides that the purpose of the chapter is

(1) to enable the trier of fact in a personal injury or wrongful death action to determine the actual amount of the prevailing party's pecuniary loss; and

(2) to provide that a prevailing party not recover more than once from all applicable sources for each item of loss sustained.

■ Clearly, pursuant to I.C. 34-4-36-2(1)(C), the trial court properly excluded evidence of Zerkel's receipt of social security disability benefits. Furthermore, the statute provides that insurance collateral source benefits are inadmissible if the benefits were paid for directly by the plaintiff or a member of the plaintiff's family. I.C. 34-4-36-2(1)(B). Besides making the unsupported assertion that Zerkel's benefits were fringe benefits of her employment, Highland presented no evidence regarding the particulars of her coverage. Absent a showing that neither Zerkel nor her husband paid for her benefits directly, we cannot say that the trial court abused its discretion in excluding the evidence. The collateral source benefits evidence was properly excluded pursuant to I.C. 34-4-36-2.

---

**3.** Zerkel's medical expenses were partially paid by her health insurance coverage with Control Data through her employer, Inland Steel, and by her husband's health insurance policy with Travelers through his employer Conrail Railroad. Additionally, Zerkel received 100% of her salary in disability/sick leave benefits for the first 16–weeks she was off work due to her injuries. For 36–weeks thereafter, Zerkel received 60% of her salary. Thereafter, she received long-term disability benefits in the approximate amount of $1,200.00 per month from May of 1993, to March of 1994. Additionally, Zerkel filed for and received disability benefits with the Department of Health and Human Services Social Security Administration.

## II. Discretionary Immunity

Following the evidentiary hearing on Highland's subsequent motion for summary judgment, wherein the court heard testimony from Highland's Director of Public Works, the court found as follows:

> In this case I understand what the town has done, but there is no evidence that they have done any surveys, or conducted any surveys to determine whether or not this sidewalk, or any particular sidewalk in the town is in need of repair. A type of policy-making decision that might be necessary if, for example, there are far more sidewalks in need of repair ... [than] the town has funds to replace.

> Therefore, by not taking any action, essentially, in regard to sidewalks until the homeowner complains the county or the town has not entered into a policy-making decision, and their conduct in that regard is not immune. And therefore, I will hold that the conduct complained of in this case and the immunity defense raised for the Town of Highland does not prevail, and that the plaintiffs are entitled to go forward on their complaint against the Town of Highland.

(R. 216). In the written order denying Highland's motion for summary judgment on the immunity issue, the court found in pertinent part as follows:

> ... [T]he court now finds that the Town of Highland is not immune for the conduct complained of insofar as it has not established that a policy oriented decision-making process as required by *Peavler* was utilized in this case.

> The Town of Highland has presented no evidence that it ever considered the need to repair the sidewalk in question, had not conducted any surveys in order to identify the sidewalks in need of repair, and instead adopted a policy of responding to homeowners' complaints or requests for repairs of sidewalks.

> IT IS NOW, THEREFORE, ORDERED, ADJUDGED AND DECREED that the conduct of the Town of Highland complained of in the plaintiff's complaint is not immune from liability under I.C. 34–4–16.5–3(6).

(R. 219).

Highland seeks refuge under the Indiana Tort Claims Act (hereinafter referred to as "the Act"). The Act's non-liability section upon which Highland relies provides in pertinent part as follows:

> [a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:
>
> (6) the performance of a discretionary function ...

I.C. 34–4–16.5–3(6) (1993).

 Whether a governmental entity is immune from liability under section 16.5–3 of the Act is a question of law for the courts. *Voit v. Allen County* (1994), Ind.App., 634 N.E.2d 767, 769, *reh'g denied, trans. denied.* Because the Act is in derogation of the common law, it is narrowly construed against the grant of immunity. *Mullin v. Municipal City of South Bend* (1994), Ind., 639 N.E.2d 278, 281. The party seeking immunity bears the burden of proving that its conduct falls within the Act, and thus is shielded from liability. *Id.*

 In construing the discretionary function immunity section of the Act, our supreme court adopted the "planning-operational" test in *Peavler v. Board of Com'rs of Monroe County* (1988), Ind., 528 N.E.2d 40, *appeal after remand,* (1990), Ind.App., 557 N.E.2d 1077. This standard essentially provides that a governmental entity will not be held liable for negligence arising from decisions made at the planning level, as opposed to the operational level. *Id.* We recently explained the test as follows:

> Under the [planning-operational] test, if the decision of the governmental entity was a 'planning' activity, that is a function involving the formulation of basic policy characterized by official judgment, discretion, weighing of alternatives, and public policy choices, then the decision is discretionary and immune under I.C. 34–4–16.5–3(6). Government decisions about policy formation which involve assessment of competing priorities, a weighing of budget-

ary considerations, or the allocation of scarce resources are also planning activities. On the other hand, if the function is 'operational', for example decisions regarding only the execution or implementation of already formulated policy, the function is not discretionary under the statute and no immunity attaches.

*Jacobs v. Morgan County* (1995), Ind.App., 652 N.E.2d 94, 98, *trans. denied* (citing *City of Crown Point v. Rutherford* (1994), Ind. App., 640 N.E.2d 750, 752, *reh'g denied, trans. denied*). Based on the foregoing standard, if Highland is successful in showing that its sidewalk replacement program resulted from decisions involving the formulation of basic policy and from a balancing of risks and benefits, we will not judge the wisdom of its decision, but rather will leave that judgment to the political process. If however, we find no evidence of deliberation, Highland will not be shielded with immunity.

The evidence reveals that Highland had an informal sidewalk replacement program in effect at the time Zerkel sustained her injuries. The Director of Public Works, John Bach, testified regarding the program. Essentially, Highland has a policy of dealing with defective sidewalks whereby concerned residents, if they are so inclined, contact Highland with their concerns. If, upon inspection, Highland finds the sidewalk in need of repair, it removes the defective sidewalk. It is then the homeowner's responsibility to pay for the replacement of the sidewalk.

■ There are approximately 150–miles of public sidewalk in Highland. Undoubtedly, Highland does not have adequate resources to attend to every sidewalk in need of repair. However, the program implemented by Highland does not amount to a policy oriented decision-making process as required by *Peavler,* 528 N.E.2d 40.

■ This is a case of omission. When considering cases of omission "a conscious balancing may be demonstrated by evidence showing that the governmental entity considered improvements of the general type alleged in plaintiff's complaint." *Voit,* 634 N.E.2d at 770. Where the governmental entity can show that it engaged in a policy

oriented decision-making process regarding the repair of defective sidewalks, there is no need for it to demonstrate that it considered and rejected the specific improvements alleged. *See Voit,* 634 N.E.2d at 770. However, here there is no indication that Highland implemented its program by way of a policy decision. There was no ordinance in existence on the subject, nor was there any formal writing to put homeowners on notice that it was their responsibility to alert Highland to potential problems. This record is completely devoid of the elements necessary to create discretionary immunity, such as: board deliberation, professional judgment, weighing of budgetary considerations and risk assessment. Essentially, any action with regard to repair or replacement of the public sidewalks is incumbent solely upon the homeowner. Highland neither inspects its sidewalks, nor decides which sidewalks need repair. When, and if, Highland receives a complaint from a homeowner, it sends the homeowner an application for the sidewalk replacement program. Highland has failed to demonstrate that it engaged in any type of systematic process for determining which sidewalks were in need of repair or that it implemented a policy weighing budgetary considerations to replace defective sidewalks. Because Highland failed to show that its "Sidewalk Replacement Program" was the product of a conscious balancing of risks and benefits, the trial court correctly found that it was not entitled to discretionary function immunity.

Highland's delegation of its responsibilities and reactive approach regarding the repair and replacement of its public sidewalks will not insulate it from liability. Based on the foregoing, the trial court properly determined that Highland was not entitled to immunity pursuant to I.C. 34–4–16.5–3(6).

### III. Negligence

Highland contends that the trial court erred in failing to grant its motion for judgment on the evidence on the issue of negligence. At the close of Zerkel's case, Highland moved for judgment on the evidence arguing essentially that Zerkel was contributorily negligent and voluntarily assumed the risk of her injuries. Following a brief hear-

ing, the trial court denied the motion. Highland renewed its motion at the close of all the evidence and the trial court again denied the motion.

 The purpose of a motion for judgment on the evidence is to test the legal sufficiency of the evidence. *Benante v. United Pacific Life Ins. Co.* (1994), Ind.App., 639 N.E.2d 375, 377, *reh'g denied.* Where the issues tried are not supported by sufficient evidence the court shall withdraw such issues from the jury and enter judgment thereon. Ind.Trial Rule 50(A). When the trial court considers a motion for judgment on the evidence, it must view the evidence in the light most favorable to the non-moving party. Judgment may be entered only if there is no substantial evidence or reasonable inference to be drawn therefrom to support an essential element of the claim. *Benante,* 639 N.E.2d at 377. On appeal, we employ the same standard of review as the trial court in determining the propriety of a judgment on the evidence. *Ward v. St. Mary Medical Center of Gary* (1995), Ind.App., 645 N.E.2d 1130, 1134.

 To premise a recovery on a theory of negligence, a plaintiff must establish three elements: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff proximately caused by the breach. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995, *reh'g denied* (citing *Miller v. Griesel* (1974), 261 Ind. 604, 611, 308 N.E.2d 701, 706).

 The question of duty is a matter of law for the court to decide. *Board of Com'rs of Adams County v. Price* (1992), Ind.App., 587 N.E.2d 1326, 1332. Here, the trial court correctly instructed the jury that the duty to maintain the reasonably safe condition of town sidewalks lies solely with Highland and that the homeowners abutting the sidewalk have no duty to repair the sidewalks. The due care required of Highland is that which an ordinary prudent person would exercise under similar circum-

stances. *Id.* The trial court properly instructed the jury that the rule of constructive knowledge applies to defects that might have been discovered had due care been exercised. There was an abundance of evidence at trial that Highland conducted absolutely no inspection of its public sidewalks, nor did it have a mandatory compliance policy with homeowners. Similarly, there was ample evidence presented at trial from which the jury could infer that Zerkel would not have been injured but for the defective condition of the sidewalk. Zerkel testified that she was walking carefully and observantly. She was wearing tennis shoes, not running or walking fast, and not distracted or tired in any way.

 Because there is sufficient evidence in the record from which the jury could infer the essential elements of Zerkel's negligence claim, judgment on the evidence was properly denied.

## IV. Contributory Negligence

 Highland contends that Zerkel was contributorily negligent by her failure to exercise ordinary care and precaution for her own safety. The burden of proving contributory negligence as an affirmative defense rested upon Highland. Because the jury returned a plaintiff's verdict, this necessarily means that they found no contributory negligence. Therefore, Highland is appealing from a negative judgment. We will not disturb the jury's verdict absent a showing by Highland that the verdict and judgment are contrary to law. A verdict is contrary to law when the evidence is without conflict and leads to a conclusion opposite of that reached by the jury. *Board of Com'rs of Adams County,* 587 N.E.2d at 1333.

 We first note that the Comparative Fault Act[4] does not apply to governmental entities. I.C. 34–4–33–8 (1993). Therefore, the common law principle of contributory negligence acts as a complete bar to recovery in actions brought under the Tort Claims Act. *See Blackburn v. City of Rochester* (1994), Ind.App., 640 N.E.2d 1068, 1070;

---

**4.** The Act is codified at I.C. 34–4–33–1 through 34–4–33–12.

*Roddel v. Town of Flora* (1991), Ind.App., 580 N.E.2d 255, 259, *trans. denied; Indiana Dept. of Highways v. Naumann* (1991), Ind. App., 577 N.E.2d 994, *reh'g denied, trans. denied.*

■ Contributory negligence is defined as "the failure of a person to exercise for his own safety that degree of care and caution which an ordinarily reasonable and prudent person in a similar situation would exercise." *Pugh's IGA v. Super Food Services, Inc.* (1988), Ind.App., 531 N.E.2d 1194, 1199, *reh'g denied, trans. denied* (quoting *Kroger Co. v. Haun* (1978), 177 Ind.App. 403, 408, 379 N.E.2d 1004, 1007).

■ The evidence establishes that Zerkel knew about a defect in the sidewalk and was aware of it on the day of her accident. The evidence further establishes that she used reasonable care to avoid walking over the defect. As Zerkel approached the defective sidewalk, she observed a large elevated crack on the left side of the sidewalk. She moved to the right side of the sidewalk in order to avoid the large crack, and subsequently fell on a smaller, undetected crack. We find that Zerkel acted reasonably to protect herself from the larger defect of which she was aware, and she reasonably did not notice the smaller defect on which she ultimately fell. We cannot say that Zerkel failed to exercise that degree of care that an ordinary reasonable person would exercise in like or similar circumstances. Because we do not find the verdict and judgment contrary to law, we will not disturb the jury's verdict.

### V. Incurred Risk

Highland contends that Zerkel incurred the risk of her injuries because she was aware of the crack in the sidewalk and appreciated the possible risk of injury.

■ Generally, incurred risk is a question of fact for the jury. *Kroger Co.,* 177 Ind.App. at 407, 379 N.E.2d at 1007. Incurred risk is an affirmative defense, and therefore the burden was on Highland to establish that Zerkel incurred the risk of her injuries by a preponderance of the evidence. *Get–N–Go, Inc. v. Markins* (1989), Ind., 544 N.E.2d 484, 486, *on reh'g* (1990), Ind., 550

N.E.2d 748 (finding that plaintiff was not contributorily negligent). In determining whether a plaintiff incurred the risk of his or her injuries, a subjective analysis is required focusing on the plaintiff's actual knowledge and appreciation of the specific risk involved and voluntary acceptance of that risk. *Get–N–Go, Inc.,* 544 N.E.2d at 486 (citing *Beckett v. Clinton Prairie School Corp.* (1987), Ind., 504 N.E.2d 552, 554). A definition of the defense was re-stated in *Beckett* as follows:

> It involves a mental state of venturousness on the part of the actor, and demands a subjective analysis into the actor's actual knowledge and voluntary acceptance of the risk. By definition ... the very essence of incurred risk is the conscious, deliberate and intentional embarkation upon the course of conduct with knowledge of the circumstances. It requires much more than the general awareness of a potential for mishap. Incurred risk contemplates acceptance of a specific risk of which the plaintiff has *actual* knowledge.

*Beckett,* 504 N.E.2d at 554 (citing *Power v. Brodie* (1984), Ind.App., 460 N.E.2d 1241, 1243 (emphasis in original)).

From our review of the record, we are not satisfied that Zerkel's actual knowledge of the crack on which she fell was conclusively shown. The evidence reveals that she was aware of a larger defect in the sidewalk, and in her exercise of reasonable care to avoid that hazard, she fell on a smaller, undetected defect. She testified that the right side of the sidewalk appeared flat to her. Absent actual knowledge of the defect, there can be no incurred risk. As we stated above, it is not enough that a plaintiff have merely a general awareness of a potential for mishap. *See Get–N–Go,* 544 N.E.2d at 486; *Beckett,* 504 N.E.2d at 554.

The evidence does not lead solely to a conclusion opposite to that reached by the jury, and therefore we decline to disturb the jury's verdict.

### VI. Jury Instruction

Highland contends that the trial court erred by giving the jury Final Instruction Number 15. The trial court instructed the jury as follows:

You are instructed that a Town's duty to exercise reasonable care and diligence to keep its town sidewalks in a reasonably safe condition for travel does not depend on the availability of money in the Town treasury to make necessary repairs to defective sidewalks.

(R. 729). Highland argues that the instruction suggested to the jury that towns have an absolute and exclusive duty to pay for repair of public sidewalks.

■■■■ The well-settled standard by which we review the challenge to jury instructions affords great deference to the trial court. The manner of instructing the jury lies within the sound discretion of the trial court, whose ruling will not be reversed unless an instruction error is such that, taken as a whole, the charge to the jury misstates the law or otherwise misleads the jury. *Jacobs v. State* (1994), Ind.App., 640 N.E.2d 61, 66, *reh'g denied, trans. denied.* Additionally, the instruction given to the jury must be a correct statement of the law, be applicable to the evidence adduced at trial and be relevant to the issues the jury must decide in reaching its verdict. *Id.*

Upon review of the entire record, we find that the instruction at issue was necessary to dispel any incorrect assumptions that the jury may have developed. During opening statements, Highland mentioned several times that it did not have the resources to keep its sidewalks perfectly level. Highland also analogized the complete maintenance of sidewalks with keeping a policeman on every corner. We fear that absent the instruction, the jury may well have been misled. Because the evidence clearly established that under Highland's sidewalk replacement program the cost of sidewalk maintenance was shared with the homeowner, we do not feel that the jury assigned 100% financial responsibility to Highland.

■■■■ We conclude that the court's instruction was a correct statement of the law, applicable to the evidence presented at trial and relevant to the issues the jury was required to decide in reaching its verdict. Reading this instruction in context with the entire jury charge, we perceive no misstatement of the law nor do we find the instruc-

tion to be misleading. The trial court did not err in instructing the jury.

## CONCLUSION

Based on the foregoing, the trial court's judgment is affirmed in all respects.

Judgment affirmed.

CHEZEM, J., concurs in result with separate opinion.

KIRSCH, J., concurs in result with separate opinion.

KIRSCH, Judge, concurring in result opinion.

I respectfully disagree with the holding of the majority in regard to the trial court's exclusion of evidence of collateral source payments. Because the defendant presented "no evidence of the particulars of her coverage" other than" the unsupported assertion that Zerkel's benefits were fringe benefits of her employment," the majority concludes that the trial court did not err in excluding evidence of collateral source payments because there was no showing that the plaintiff or her husband paid for such benefits directly.

Prior to trial, the plaintiff filed a motion in limine requesting, inter alia, that the trial court bar any mention of collateral source payments. The plaintiff's contention in her motion was that plaintiff had paid for such benefits by reason of her labor, and that "[p]ayment in kind, such as supplying one's labor, is no less payment than payment in money." *Record* at 286. On this basis, the trial court sustained the motion.

At trial, the defendant followed the proper procedure in requesting that the jury be excused so that defendant could make an offer to prove. Defense counsel asked leave to question the plaintiff regarding the collateral source payments. The trial court instructed counsel "to tell the court reporter the questions you want to ask and the answers you expect." *Record* at 527–28. In response, defense counsel stated that he would ask, "One, were the medical bills paid by Inland Steel. And I believe under the

collateral source rule there is no indication that she paid any extra for this benefit and I think that's admissible, therefore, under the statute." *Record* at 528.

The method for making the offer to prove was determined by the trial court. It may amount to no more than an unsupported assertion, but that is because the trial court prevented counsel from directly questioning the witness. Moreover, neither before the trial court, nor on appeal, does plaintiff contend that the collateral source benefits were anything other than fringe benefits of employment for which she paid by reason of her labor. Because I believe that such payment does not constitute direct payment as set forth in the statute, I believe the trial court erred in denying the collateral source evidence. Because the plaintiff would have been entitled to introduce evidence of her obligation to repay such sums, however, I believe there was no prejudice to the defendant from the exclusion and, accordingly, the error was harmless. For such reason, I concur in the result reached by the majority regarding the collateral source payments. I fully concur in regard to all other issues.

CHEZEM, Judge, concurring in result opinion.

While I fully concur in issues I, III, IV, and V, I concur in result as to issue II. I agree that the trial court properly determined that Highland was not entitled to immunity pursuant to I.C. 34–4–16.5–3(6). However, I disagree with the majority's statement that the record is "completely devoid of the elements necessary to create discretionary immunity[.]" Slip op. at 10.

At the evidentiary hearing on Highland's motion for summary judgment, Highland's director of public works testified that it was his understanding that the sidewalk replacement program was adopted in an attempt to deal with the limited resources available to repair and maintain the town's considerable miles of sidewalk. (Tr., R. at 199). This indicates that there was some sort of a weighing of budgetary considerations when the program was being designed. Although I do not believe that this limited description of budgetary considerations, in and of itself, was enough to entitle Highland to discretionary immunity, I cannot agree that Highland did not present any of the elements necessary to create discretionary immunity. Accordingly, I am compelled to concur in result on this issue.